## COLLINS *v.* NEW HAMPSHIRE.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW HAMPSHIRE.

No. 17. Argued March 23, 24, 1898. — Decided May 23, 1898.

Following the decision in *Schollenberger* v. *Pennsylvania, ante,* 1, the court holds that the statute of New Hampshire prohibiting the sale of oleomargarine as a substitute for butter, unless it is of a pink color, is invalid, as being, in necessary effect, prohibitory.

THE case is stated in the opinion. It was argued with *Schollenberger* v. *Pennsylvania, ante,* 1, by the same counsel for plaintiff in error.

*Mr. William D. Guthrie* for plaintiff in error. *Mr. Richard*

*C. Dale, Mr. Henry R. Edmunds* and *Mr. Albert H. Veeder* were on his brief.

*Mr. John G. Johnson* was for the defendant in error in *Schollenberger* v. *Pennsylvania,* argued with this case; but there was no appearance for the defendant in error in this case.

Mr. Justice Peckham delivered the opinion of the court.

This case comes here by virtue of a writ of error to the Supreme Court of the State of New Hampshire, by which we are called upon to review the judgment of that court sustaining a conviction of the plaintiff in error in the court of first instance of a violation of the public statutes of the State, prohibiting the sale of oleomargarine as a substitute for butter unless it is of a pink color. The law is to be found in sections 19 and 20, chap. 127, Public Statutes, 1891. The two sections are set forth in the margin.[1]

The plaintiff in error was convicted of selling a package of

---

[1] § 19. It shall be unlawful to sell, offer for sale, or keep in possession with intent to sell, in this State, any substance or compound made wholly or in part of fats, oils or grease, not produced from milk or cream, in imitation of, or as a substitute for, butter or cheese, unless the same is contained in tubs, firkins, boxes or other packages, each of which has upon it, to indicate the character of its contents, the words "Adulterated butter," "Oleomargarine," or "Imitation cheese" as the case may be, in plain roman letters not less than one half inch in length, and so placed and made or attached that they can be readily seen and read and cannot be easily defaced; and if the substance or compound is a substitute for cheese, unless the cloth surrounding it has a like inscription; and if it is a substitute for butter, unless it is of a pink color. When any such substance or compound is sold in less quantities than the original packages contain, the seller shall deliver to the purchaser with it a label bearing the words indicating its character as above, in like letters.

§ 20. If any person shall sell, or offer for sale, or keep in possession with intent to sell, in this State, any substance or compound of the kinds described in the preceding section in a manner that is made unlawful by said section, or shall sell, offer for sale, or keep in possession with intent to sell, any such substance or compound without disclosing its true character, he shall be fined not more than one hundred dollars, or be imprisoned not more than sixty days, or both.

oleomargarine not of pink color in violation of the statute and was sentenced to pay a fine of $100, and to pay the costs of prosecution and to stand committed until sentence was performed.

The following are the facts appearing in the record:

"The respondent is agent at Manchester of Swift & Co., an Illinois corporation, having its principal place of business in Chicago. The corporation manufactures oleomargarine and puts it up in packages in Chicago, and distributes the packages from there to different places — one of which is Manchester — where it maintains stores and sells the article at wholesale in the original packages. It has paid the special United States taxes imposed by the act of Congress of August 2, 1886 (Supp. to R. S. of U. S., v. 1, p. 505), and has complied with all other requirements of that act in respect to the manufacture and sale at wholesale of oleomargarine. The article has the color of butter, the same coloring matter being used to color it that is frequently used to color butter, and is made wholly or in part of fats, oils or grease not produced from milk or cream, in imitation of or as a substitute for butter. It is not manufactured in this State. The respondent as such agent sold in Manchester, at wholesale, at the store of the company, a package of said article weighing ten pounds in the form it was put up in Chicago by his principal. The provisions of section 19, chapter 127, Public Statutes of this State, were complied with, so far as the package was concerned, except the color of its contents was not pink. The oleomargarine sold was the oleomargarine of commerce as the same is known and dealt in as an article of food.

"The respondent claimed that upon these facts he was not guilty, because the statute of this State is in contravention of the Constitution of the United States and its amendments and of the laws of Congress; otherwise he admitted his guilt. The court ruled against the respondent as to the above claim, and he excepted."

It was stated on the argument that since the conviction of the plaintiff in error the statute above cited had been repealed, but that such repeal did not affect the conviction, because of

the provision made in the New Hampshire statutes that "no suit or prosecution, pending at the time of the repeal of an act, for any offence committed or for the recovery of a penalty or forfeiture incurred, under the act so repealed, shall be affected by such repeal." We are therefore called upon to determine the validity of the conviction.

The plaintiff in error claims that the statute under which he was indicted and convicted is void, because in contravention of the Constitution of the United States, which gives power to Congress " to regulate commerce with foreign nations and among the several States and with the Indian tribes."

We think this case comes within the principle of the cases just decided regarding the statute of the Commonwealth of Pennsylvania prohibiting the introduction of oleomargarine into that Commonwealth. This statute is in its practical effect prohibitory. It is clear that it is not an inspection law in any sense. It provides for no inspection, and it is apparent that none was intended. The act is a mere evasion of the direct prohibition contained in the Pennsylvania statute, and yet if enforced the result, within the State, would be quite as positive in the total suppression of the article as is the case with the Pennsylvania act.

In a case like this it is entirely plain that if the State has not the power to absolutely prohibit the sale of an article of commerce like oleomargarine in its pure state, it has no power to provide that such article shall be colored, or rather discolored, by adding a foreign substance to it, in the manner described in the statute. Pink is not the color of oleomargarine in its natural state. The act necessitates and provides for adulteration. It enforces upon the importer the necessity of adding a foreign substance to his article, which is thereby rendered unsalable, in order that he may be permitted lawfully to sell it. If enforced, the result could be foretold. To color the substance as provided for in the statute naturally excites a prejudice and strengthens a repugnance up to the point of a positive and absolute refusal to purchase the article at any price. The direct and necessary result of a statute

must be taken into consideration when deciding as to its validity, even if that result is not in so many words either enacted or distinctly provided for. In whatever language a statute may be framed, its purpose must be determined by its natural and reasonable effect. *Henderson* v. *Mayor of New York*, 92 U. S. 259; *Morgan's Steamship Co.* v. *Louisiana*, 118 U. S. 455, at 462. Although under the wording of this statute the importer is permitted to sell oleomargarine freely and to any extent, provided he colors it pink, yet the permission to sell, when accompanied by the imposition of a condition which, if complied with, will effectually prevent any sale, amounts in law to a prohibition.

If this provision for coloring the article were a legal condition, a legislature could not be limited to pink in its choice of colors. The legislative fancy or taste would be boundless. It might equally as well provide that it should be colored blue or red or black. Nor do we see that it would be limited to the use of coloring matter. It might, instead of that, provide that the article should only be sold if mixed with some other article which, while not deleterious to health, would nevertheless give out a most offensive smell. If the legislature have the power to direct that the article shall be colored pink, which can only be accomplished by the use of some foreign substance that will have that effect, we do not know upon what principle it should be confined to discoloration, or why a provision for an offensive odor would not be just as valid as one prescribing the particular color. The truth is, however, as we have above stated, the statute in its necessary effect is prohibitory, and therefore upon the principle recognized in the Pennsylvania cases it is invalid.

*The judgment of the Supreme Court of New Hampshire is reversed and the case remanded to that court for further proceedings not inconsistent with this opinion.*

MR. JUSTICE HARLAN and MR. JUSTICE GRAY dissented.