## GEORGE v. BAILEY, Collector of Internal Revenue, et al.

(District Court, W. D. North Carolina, at Greensboro. August 22, 1921.)

1. **Internal revenue ⟨⟩2—Act levying 10 per cent. excise tax on net profits of employers of child labor held unconstitutional.**

   Act Feb. 24, 1919, § 1200 (Comp. St. Ann. Supp. 1919, § 6336⅞a), providing a revenue tax of 10 per cent. on the net profits of certain employers of child labor, is unconstitutional, as an attempt on the part of Congress, not to collect revenue, but to control the internal affairs of a state.

2. **Internal revenue ⟨⟩28—Revenue laws enacted by Congress to enforce legislation forbidden by Constitution are void.**

   Since Act Feb. 24, 1919, § 1200 (Comp. St. Ann. Supp. 1919, § 6336⅞a), levying a 10 per cent. revenue tax on the net gain of employers of child labor, is unconstitutional, a suit to enjoin the collection of this tax can be maintained, notwithstanding Rev. St. § 3224 (Comp. St. § 5947), providing that no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court, since to permit its collection would extend the power of Congress through taxation to legislation forbidden to it by the Constitution, especially in view of Const. Amends. 9 and 10.

In Equity. Suit by John J. George, trading and doing business as the Vivian Cotton Mills and the Vivian Spinning Company, against J. W. Bailey, Collector of Internal Revenue for the District of North Carolina, and another, for an injunction. Temporary restraint made permanent.

The complainant is John J. George, trading and doing business as Vivian Cotton Mills and Vivian Spinning Company, operating plants for the manufacture of cotton goods at Cherryville, in the county of Gaston, in this district. The defendants are J. W. Bailey, collector of internal revenue for the district of North Carolina, and Claude E. Moser, one of his deputies.

On the 9th of November, 1920, the Commissioner of Internal Revenue made an assessment for taxes against the complainant for $2,098.06, to be due the 19th of November, 1920. Penalty at the rate of 5 per cent. and interest at the rate of 1 per cent. per month for failure to pay the tax assessed by the date it was due was included. Upon notice of the assessment to the complainant, appeal was made by him to the Commissioner of Internal Revenue to remit the same. The appeal being upon the form prescribed by the Treasury Department and termed a claim for abatement. This claim was denied by the Commissioner of Internal Revenue, and thereupon the defendant J. W. Bailey, through his deputy, Claude Moser, was about to proceed by warrant of distraint to subject the property of complainant to sale to satisfy the said assessment. The said assessment was made against the said complainant by the Commissioner of Internal Revenue, under authority as it is claimed of title 12, section 1200, of the Act of Congress, approved February 24, 1919 (Comp. St. Ann. Supp. 1919, § 6336⅞a). This section is set out in the opinion.

The defendants have filed an answer denying some of the several allegations of the bill, but admitting the assessment for the amount set forth; that claim for abatement has been filed and denied, and that the collector, through his deputy, is proceeding by warrant of distraint to collect the taxes, with penalty and interest.

The purpose of complainant's bill is to restrain the collector and his deputy from proceeding to levy upon and sell his property to satisfy the assessment.

---

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

John M. Robinson and C. B. Fetner, both of Charlotte, N. C., for complainant.

Stonewall Jackson Durham, U. S. Atty., of Gastonia, N. C., for defendants.

BOYD, District Judge (after stating the facts as above). [1] In order to pass intelligently upon the questions involved in this case reference is had to certain of the provisions of two federal statutes and one statute of the state of North Carolina. The first of the federal statutes to be referred to is what is known as the Owen Keating Act, which was passed by the Sixty-Fourth Congress and will be found in 39 U. S. Statutes at Large, chapter 432, page 675. It is entitled "An act to prevent interstate commerce in the products of child labor, and for other purposes." The following quoted from that act is all that is deemed necessary to reproduce here:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that no producer, manufacturer or dealer shall ship or deliver for shipment in interstate or foreign commerce any article or commodity the product of any mine or quarry, situated in the United States, in which within thirty days prior to the removal of such product therefrom children under the age of sixteen years have been employed or permitted to work, or any article or commodity the product of any mill, cannery, workshop, factory, or manufacturing establishment, situated in the United States, in which within thirty days' prior to the removal of such product therefrom children under the age of fourteen years have been employed or permitted to work, or children between the ages of fourteen years and sixteen years have been employed or permitted to work more than eight hours in any day, or more than six days in any week, or after the hour of seven o'clock post meridian, or before the hour of six o'clock ante meridian: Provided, that a prosecution and conviction of a defendant for the shipment or delivery for shipment of any article or commodity under the conditions herein prohibited shall be a bar to any further prosecution against the same defendant for shipments or deliveries for shipment of any such article or commodity before the beginning of said prosecution."

This statute was before the Supreme Court of the United States upon an appeal from a decision of this court to the effect that it is beyond the powers delegated by the Constitution to the United States to regulate labor within a state by an act of Congress. This decision was affirmed by the Supreme Court, in the case of Hammer v. Dagenhart, reported in 247 U. S. 251, 38 Sup. Ct. 529, 62 L. Ed. 1101, 3 A. L. R. 649, Ann. Cas. 1918E, 724, Mr. Justice Day in delivering the opinion of the court among other things said:

"In interpreting the Constitution it must never be forgotten that the nation is made up of states to which are intrusted the powers of local government. And to them and to the people the powers not expressly delegated to the national government are reserved. Lane County v. Oregon, 7 Wall. 71, 76. The power of the states to regulate their purely internal affairs by such laws as seem wise to the local authority is inherent and has never been surrendered to the general government. New York v. Miln, 11 Pet. 102, 139; Slaughter House Cases, 16 Wall. 36, 63; Kidd v. Pearson, supra. To sustain this statute would not be in our judgment a recognition of the lawful exertion of congressional authority over interstate commerce, but would sanction an invasion by the federal power of the control of a matter purely local in its character, and over which no authority has been delegated to Congress in conferring the power to regulate commerce among the states."

It is held in Dartmouth College v. Woodward, 4 Wheat. 518, 4 L. Ed. 629:

"That the framers of the Constitution did not intend to restrain the states in the regulation of their civil institutions, adopted for internal government, and that the instrument they have given us, is not to be so construed, may be admitted."

It was contended by the government in the Dagenhart Case that the interstate commerce provision of the Constitution which authorizes Congress to regulate commerce with foreign nations, between the several states and with the Indian tribes, conferred the power which made the act valid, but the Supreme Court overruled this contention in most emphatic terms, as will be observed from this further quotation from the Dagenhart opinion:

"The control by Congress over interstate commerce cannot authorize the exercise of authority not intrusted to it by the Constitution. Pipe Line Cases, 234 U. S. 548, 560. The maintenance of the authority of the states over matters purely local is as essential to the preservation of our institutions as is the conservation of the supremacy of the federal power in all matters intrusted to the nation by the federal Constitution."

There can be no possible misunderstanding as to the meaning of this decision, for it is distinctly declared that the right to regulate labor within a state is a state function and that Congress is forbidden by the Constitution to interfere with it.

After the Dagenhart decision, Congress has undertaken to avoid its effect by enacting section 1200 of title 12 of "An act to provide revenue and for other purposes," approved February 24, 1919 (40 Stat. at Large, part 1, page 1057). This section is in the following language:

"That every person (other than a bona fide boys' or girls' canning club recognized by the agricultural department of a state and of the United States) operating (a) any mine or quarry situated in the United States in which children under the age of sixteen years have been employed or permitted to work during any portion of the taxable year; or (b) any mill, cannery, workshop, factory, or manufacturing establishment situated in the United States in which children under the age of fourteen years have been employed or permitted to work, or children between the ages of fourteen and sixteen have been employed or permitted to work more than eight hours in any day or more than six days in any week, or after the hour of seven o'clock post meridian, or before the hour of six o'clock ante meridian, during any portion of the taxable year, shall pay for each taxable year, in addition to all other taxes imposed by law, an excise tax equivalent to 10 per centum of the entire net profits received or accrued for such year from the sale or disposition of the product of such mine, quarry, mill, cannery, workshop, factory, or manufacturing establishment."

It will be noted that this section is practically a reproduction of the material provisions of the Owen Keating bill; the only difference being that under that bill, the product of an establishment using child labor, was forbidden transportation in interstate commerce, and in the present act an establishment using child labor contrary to its provisions is subject to a tax of 10 per centum, upon the net income derived from its operations.

The question which suggests itself in the outset is whether the last act is intended to raise revenue. It will scarcely be insisted that such

is its object. It is more reasonable to conclude that the purpose of the tax feature is to impose a penalty in order to deter the violation of the child labor provision. It would be a rather nonproductive revenue system which imposed taxes, the effect of which would be to annihilate the subject of taxation, or to prohibit the exercise of the privilege for which the tax is levied.

In the case of Collins v. New Hampshire, 171 U. S. 30, 33, 34, 18 Sup. Ct. 768, 769 (43 L. Ed. 60), the following is found:

"The direct and necessary result of a statute must be taken into consideration when deciding as to its validity, even if that result is not in so many words either enacted or distinctly provided for. In whatever language a statute may be framed, its purpose must be determined by its natural and reasonable effect."

This doctrine is reaffirmed in the Dagenhart Case, supra. In what are called the Pipe Line Cases, 234 U. S. 548–560, 34 Sup. Ct. 956, 958 (58 L. Ed. 459), the Supreme Court used this language which is quoted before in this opinion:

"The control by Congress over interstate commerce cannot authorize the exercise of authority not entrusted to it by the Constitution."

If that principle applies to the authority of Congress in the regulation of commerce, there is no reason why it should not apply in raising revenue by taxation, for the power delegated to the United States to levy and collect taxes, is no more elastic than the power delegated by the commerce provision. As bearing upon this point the following is quoted from the opinion in Veazie Bank v. Fenno, 75 U. S. (8 Wall.) 533, 19 L. Ed. 482, which was a case involving the right of the federal government to levy taxes upon state banks:

"There are, indeed, certain virtual limitations, arising from the principles of the Constitution itself. It would undoubtedly be an abuse of the power, if so exercised as to impair the separate existence and independent self-government of the states, or if exercised for ends inconsistent with the limited grants of power in the Constitution."

By the Constitution the federal government is invested with power by congressional legislation "to lay and collect taxes, duties, imposts and excises, to pay the debt and provide for the common defense and general welfare of the United States." But nowhere in the Constitution can be found authority to the national government to regulate labor within the states.

Upon consideration of the prime question in this case and the authorities bearing upon it, the conclusion seems to be irresistible that the national Legislature cannot do indirectly that which it is forbidden by the Constitution to do directly; and it being definitely determined by the highest court of the land that the right to regulate labor is inherent in the states, then Congress cannot intervene to control it, either by way of interstate commerce, efforts to levy taxes, or by any other method.

Having disposed of the two federal statutes which were to be discussed in passing upon the question involved in the case in hand, it is deemed expedient to comment upon the statute of the state of North Carolina in regard to child labor. This statute can be found in the

Public Laws of North Carolina, Session of 1919, chapter 100, page 274. Section 5 of the act is as follows:

"No child under the age of fourteen years shall be employed or permitted to work, in or about or in connection with any mill, factory, cannery, workshop, manufacturing establishment, laundry, bakery, mercantile establishment, office, hotel, restaurant, barber shop, bootblack stand, public stable, garage, place of amusement, brick yard, lumber yard, or any messenger or delivery service, except in cases and under regulations prescribed by the commission hereafter created: Provided, the employments in this section enumerated shall not be construed to include bona fide boys' and girls' canning clubs recognized by the agricultural department of this state; and such canning clubs are hereby expressly exempted from the provisions of this act."

The Child Labor Law of North Carolina is made a feature of the public school system of the state, thus concentrating the means for the promotion of the mental and the physical welfare of children under one harmonious plan, to be carried out by the agencies provided for in the act, the purposes of which are to foster the health and physical development of children and at the same time train their minds for future usefulness, and its provisions appear ample to accomplish these ends.

By comparing the federal and state statutes it will be readily seen that the latter affords as much protection to the health and physical condition of children as the former, and as stated before the state act co-ordinates its purpose to promote physical welfare, with provisions for mental training, and, further, an important provision in the state statute is the punishment, provided for its violation, instead of undertaking as the federal act, to make the income of an establishment using child labor illegally, the subject of taxation, it denounces as a criminal offense the violation of its provisions and subjects the offender to a fine or imprisonment, or both at the discretion of the court.

There can be no doubt as a general proposition that the average person is more heedful respecting laws constituting crime than they are those creating civil liability. For this reason the state statute is undoubtedly more capable of prompt execution than the act of Congress, and the expenses incident to it when compared to that of the federal plan, must necessarily be a great deal less; but, however that may be, the burden incident to the enforcement of the state law, is not a drain upon the federal treasury but is borne by the state.

It is admitted that Congress engaged in a laudable undertaking when it set about to regulate child labor in the country. It began with the enactment of the Owen Keating Law September 1, 1916, which was followed February 24, 1919, by the passing of the statute now under consideration. There can be no criticism of the purpose our representatives had in view in the enactment of these statutes, for it is evident that they were prompted by the highest motives of humanity, accompanied with a desire to protect children from mental and physical deterioration, in order to maintain a standard of manhood and womanhood fully prepared to respond to the obligations and duties resting upon the citizens of this country. There could be no reasonable ground for dissenting to what Congress has done, if the action came within the scope of power delegated to the United States by the Constitution; but, as before stated, the Supreme Court has put an end to this question, and

has decided in terms not susceptible of difference of opinion that Congress is not authorized to deal with this subject with the view of federal control, but that such is the function of the several states, each to proceed in its own way.

The state of North Carolina has undertaken to utilize the power reserved to it by the Constitution of the United States to control child labor within its borders, and through the General Assembly a law which is deemed wise, regulating this character of labor, has been enacted, and provision made for its efficient enforcement.

[2] In the presentation of this case counsel for the defendant moved to dismiss complainant's bill, relying upon section 3224 of the Revised Statutes (Comp. St. § 5947), which is in the following language:

"No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court."

It is insisted that this statute renders the courts powerless to intervene where the government is proceeding under assessments to collect taxes, no matter whether the tax is legal or illegal, well-founded or erroneous, constitutional or unconstitutional. If this position can be maintained, then Congress, under the guise of raising revenue by taxation, can overcome all constitutional barriers.

The position taken by the counsel for the defendant does not appeal to the court here as being based upon sound reason or intelligent construction. The Tenth Amendment to the Constitution reads as follows:

"The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people."

From time to time the courts have been called on to construe the meaning of this amendment, and almost without exception it has been held that the powers of the national government are limited to those delegated. This construction is fortified by the Ninth Amendment, which reads as follows:

"The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."

This amendment must be construed to mean that, in framing the Constitution, the sovereign people of the several states ceded to the general government certain designated powers, leaving all other rights and powers, such as are necessary to maintain our dual system of government, to the states respectively and to the people. This court fully realizes the necessity for the maintenance by all available means of healthful conditions among children, and the obligation which rests upon us, as a provident people, to rear men and women well equipped mentally and physically for future usefulness, is profoundly appreciated. There is ample authority somewhere in our governmental system to meet this obligation and discharge this duty. The Supreme Court has declared that the duty devolves upon the states, respectively, as one of reserved powers. It would seem, therefore, that the states in their efforts to meet this obligation should be left undisturbed by federal intervention.

In keeping with the line of the foregoing discussion the conclusion is that the defendants' motion to dismiss for the want of jurisdiction should be denied; that in passing the act in question Congress exceeded the powers delegated to the United States by the Constitution; that the assessment against the complainant is unwarranted, and is not a tax such as contemplated by law to raise revenue, but may be termed a penalty to prevent the violation of the provisions of the act, which could not be enforced by assessment and warrant of distraint, even if the act was valid; that he is entitled to the relief prayed for in his bill; and that the temporary restraint heretofore granted should be made permanent.