## ATLANTIC REFINING CO. et al. v. TRUMBULL, Governor, et al.

District Court, D. Connecticut.
Aug. 25, 1930.

Lucius F. Robinson, Thomas J. Spellacy, and John T. Robinson, all of Hartford, Conn., for plaintiffs.

Ernest L. Averill, Deputy Atty. Gen., and Bernard A. Kosicki, Asst. Atty. Gen., for defendants.

Before AUGUSTUS N. HAND, Circuit Judge, and THOMAS and BURROWS, District Judges.

THOMAS, District Judge.

The plaintiffs file this bill praying for an injunction restraining the Governor and other executive officers of the state of Connecticut from enforcing certain sections of an act of the Connecticut Legislature approved July 2, 1929, relating to the sale of motor lubricating oils within the state. The statute in question reads as follows:

"Substitute for House Bill No. 651.
"Chapter 296

"An Act Concerning The Sale of Motor Lubricating Oils.

"Be it enacted by the Senate and House of Representatives in General Assembly convened:

"Section 1. No person, firm or corporation shall sell, expose for sale or offer or expose for sale any motor lubricating oils used in motor vehicles in such manner as to deceive the purchaser as to the nature, quality and identity of such product.

"Sec. 2. No person, firm or corporation shall expose for sale, offer for sale or sell from any tank or container or other distributing device or equipment, any other motor lubricating oils than those indicated by the name, trade name, symbol, sign or other distinguishing mark or device of the manufacturer or distributor, appearing upon the tank, container or other distributing equipment from which the same are sold, offered for sale or distributed.

"Sec. 3. No person, firm or corporation shall expose for sale, offer for sale or sell, under any trade mark or trade name in general use, any motor lubricating oils, except those manufactured or distributed by the manufacturer marketing motor lubricating oils, under such trade mark or trade name; or substitute, mix or adulterate the motor lubricating oils sold, offered for sale or distributed under such trade mark or trade name; or refill used packages or containers, which have contained goods sold under a trade mark, unless with products of the same manufacture and of the same grade.

"Sec. 4. No person, firm or corporation shall sell, offer for sale, deliver, or have in his possession for the purpose of sale, any article or product represented to be used as motor lubricating oil or oils for use in motor vehicle engines, other than engines used in aircraft, that shall not be equal to or better in quality and specifications than that known as 'United States Government Specifications for Motor (Class D) Lubricants.'

"Sec. 5. All tests to determine the quality of motor lubricating oil as referred to in this act shall be made in accordance with 'Methods for Testing Motor Lubricants and Liquid Fuels' contained in technical paper number 323B, part 2, bureau of mines of the United States department of interior, provided, if the federal specifications board of the United States government shall adopt other methods for testing motor lubricants by the publication of any paper superseding said technical paper 323B, or otherwise, such methods shall be used under the provisions of this section, provided the commissioner shall not use such other methods except upon three months' notice to all persons, firms and corporations selling such lubricants.

"Sec. 6. Any container from which or in which, motor lubricating oils are sold or delivered, whether at wholesale or retail, shall have plainly printed thereon, or upon a suitably printed tag attached thereto, the following inscription: 'Guaranteed to be Equal, or Better, in Quality and Specifications than that known as "United States Government Specifications for Motor (Class D) Lubricants."'

"Sec. 7. Each person who shall sell or distribute any motor lubricating oils for sale at retail, shall render an invoice on which the guarantee referred to in section five shall be given. Each person who shall purchase any motor lubricating oil for redistribution or sale at retail shall, and each purchaser of any motor lubricating oil at retail may, demand and receive an invoice on which such guarantee shall be given.

"Sec. 8. Any person, firm or corporation who shall violate any provision of this act shall be fined not more than one hundred dollars or imprisoned not more than thirty days or both for each offense.

"Approved July 2, 1929."

The plaintiffs are engaged in the business of manufacturing and/or marketing of lubricating oils for use in motor vehicle engines. They are all engaged in interstate commerce and in the conduct of their business sell large quantities of lubricating oils in the state of Connecticut and elsewhere.

Only sections 4, 5, 6, and 7 of the act are attacked; and such portion of section 8 as

provides a penalty for the violation of sections 4, 5, 6, and 7.

The bill of complaint charges that the above enumerated sections contravene the federal Constitution in two important respects:

(1) In that the statute will deprive the plaintiffs of their liberty and property without due process of law; and

(2) In that this statute trespasses upon the field of legislation appropriated by the Congress of the United States in the constitutional regulation of interstate commerce.

The plaintiffs moved for a temporary injunction upon the bill, and a hearing has been had before a statutory court duly convened in accordance with the provisions of section 266 of the Judicial Code (28 USCA § 380). The application for an interlocutory decree is necessary because of the provisions of the Judicial Code, and the procedure here adopted by the plaintiffs comports with the ruling of the Supreme Court of the United States in Smith v. Wilson, 273 U. S. 388, 47 S. Ct. 385, 71 L. Ed. 699.

Upon this hearing the parties stipulated as follows:

"1. The allegations of paragraphs 1, 2 and 4 of the Bill of complaint are made part hereof by reference.

"2. Exhibit 'A' attached to the Bill of Complaint and referred to in paragraph 3 thereof is a true copy of the statute entitled 'An Act Concerning the Sale of Motor Lubricating Oils' enacted by the Senate and House of Representatives in General Assembly of the State of Connecticut approved by John H. Trumbull, Governor of the State, July 2, 1929.

"3. Exhibit 'B' hereto attached is a true copy of Technical Paper No. 323B, Bureau of Mines of the U. S. Department of Interior, referred to in Section 5 of the statute aforesaid.

"4. 'United States Government Specifications for Motor (Class D) Lubricants' referred to in Section 4 of said statute is contained in Part 1 of Exhibit 'B' at pages 12 et seq.

"5. 'Methods for Testing Motor Lubricants and Liquid Fuels' referred to in Section 5 of said statute is contained in Part II of Exhibit 'B' at pages 31 et seq.

"6. Lubricating oil for use in motor vehicle engines is a useful and necessary article extensively used by the public, the distribution of which in interstate and intrastate commerce is general and continuous.

The business of its manufacture, marketing and selling is a legitimate and useful business. Lubricating oil for such use is a harmless substance of a low degree of inflammability.

"7. Lubricating oils for use in motor vehicle engines other than engines used in aircraft now sold and marketed in commerce and generally graded in accordance with the classifications of the Society of Automotive Engineers as from time to time formulated, which classifications are recognized by motor vehicle manufacturers and in the lubricating oil trade as sound and proper classifications for such use. The manufacture of such oils is a progressive art dependent upon the changes and improvements in the machinery in which such oils are used and with the progress of the art any fixed specifications may become inadequate. A copy of the present classifications of the Society of Automotive Engineers is attached hereto and marked Exhibit 'C.'

"8. Lubricating oils of differing specifications as to viscosity, fluidity or body, flash and fire point limits are proper and useful for engines and machinery of differing types. Grade of oils best adapted for use in certain engines and under certain conditions are improper and often injurious in other engines and under other conditions. Whether a particular lubricating oil is suitable in quality for a particular motor vehicle engine depends upon the type and condition of the engine and conditions of service. The classification of the Society of Automotive Engineers supplies a useful guide to the trade and to the public in the use of lubricating oils in the different types of motor vehicle engines and under differing conditions.

"9. The lubricating oils particularly adapted to use in certain types of motor vehicle engines are mineral oils compounded with vegetable oils, animal oils, soaps and/or organic acids obtained from animal oils, vegetable oils or petroleum.

"10. Many useful lubricating oils which are in general use and which are included in the classification of the Society of Automotive Engineers are not included in the 'United States Government Specifications for Motor (Class D) Lubricants' aforesaid because they do not fall within the viscosity limits specified for the several classes described therein. The flash and fire point limits as prescribed in 'Methods for Testing Motor Lubricants and Liquid Fuels' aforesaid would preclude the sale of lubricating oils diluted with kerosene or similar compounds for low tempera-

ture service, a practice which is recommended by the leading automobile manufacturers. .

"11. Many lubricating oils with established reputation for high quality and recommended by automobile manufacturers as best adapted to use in certain motor vehicle engines and under certain conditions do not conform to the standards and specifications and do not meet the tests prescribed by said Act, and many lubricating oils marketed by the plaintiffs which do not conform to the standards and specifications and would not under all conditions meet the tests prescribed by said Act are recognized by the automobile industry and the public as good and useful, and large numbers of automobiles in use in Connecticut and elsewhere are equipped with engines which require for their proper operation lubricating oils which do not conform to said standards and specifications and a prohibition of sale of such oils would work a serious hardship upon the owners of such automobiles.

"12. All lubricating oils marketed by the plaintiffs are produced outside the State of Connecticut.

"13. The power and duties of the several defendants in relation to the enforcement of the laws of said State and the prosecution of crimes against said laws appear in the General Statutes and Public Acts of said State and said General Statutes and said Public Acts in so far as they are pertinent are made a part hereof by reference."

The plaintiffs then produced oral testimony given by experts in the manufacture of lubricating oils, the general tendency of which was to prove that the criteria set up in the "technical paper 323B," part 2, issued by the Bureau of Mines of the United States Department of Commerce (Exhibit B), are not determinative of utility, but that they are rather marks of identification. The proof tended further to show that various kinds of lubricating oils were serviceable or unserviceable in relation to the mechanism in which they were to be introduced, and that what would constitute a good lubricant under one set of conditions would not be a good lubricant under a different set of conditions. In other words, the trend of the proof pointed to the conclusion that the words good or bad as a characterization of motor lubricants had a connotation that was not relative to any assumed fixed lubricating standard, but that a lubricating oil was neither good nor bad, except in relation to a given mechanism operating under given conditions.

The objection to the statute under the Fourteenth Amendment to the Constitution is predicated upon the following propositions:

It is asserted that the language of the act is so vague and incapable of delimitation as to furnish no intelligible guide to conduct, and, consequently, that liberty and property are unreasonably imperiled. It is further asserted that the prohibition against the sale of lubricating oils, other than those having the characteristics specified in paper 323B, is an arbitrary and unwarranted exercise of the legislative power; that it has no reasonable relation to the health, safety, or morals of the community, and that the exclusion of motor lubricants, having attributes differing in some respects from those shown in paper 323B, results in the suppression of a reasonable and lawful trade—the conduct of which is in no sense subject to the police power of the State.

As already noted, no attack has been made on the first three sections, and the plaintiffs contend that these three sections protect the public against the fraud which the Legislature had in mind when the act was passed, and that the purpose and effect of these three sections is beneficial to the plaintiffs in the transaction of their business, and that they are designed to prevent deception and protect the purchaser of oil from having foisted upon him some brand or grade of oil other than that which he believes he is buying.

This brings us to a consideration of the language of the objectionable sections. Under section 4 it is provided that "no person * * * shall sell * * * deliver, or have in his possession for the purpose of sale, any article or product represented to be used as motor lubricating oil or oils for use in motor vehicle engines, other than engines used in aircraft, that shall not be equal to or better in quality and specifications than that known as 'United States Government Specifications for Motor (Class D) Lubricants.' " The language of this section is indefinite, but we may assume that it was intended thereby to prohibit the sale of a lubricating oil of a quality inferior to the oil described in United States Government Specifications for Motor (Class D) Lubricants (Exhibit B). By stipulation it was agreed that United States Government Specifications for Motor (Class D) Lubricants are those set forth on "Technical Paper 323B" issued by the Bureau of Mines of the Department of Commerce and revised October 21, 1927.

The defendants introduced no oral proof, and the witnesses called by the plaintiffs tes-

tified that the specification set forth in the foregoing publication is not a standard of quality used by the American Society for Testing Materials, is ignored by 90 per cent. of the automobile manufacturers, and is arbitrary and impracticable.

Many classes of oils widely sold by reputable oil companies do not meet the requirements of Technical Paper 323B. The oil known generally as S. A. E. 40 fails to meet the viscosity requirements. Compounded oils generally used in Ford model T automobile cars fail to meet it, and the same thing is true of oils used for upper cylinder lubrication. Diluted oils specially used in winter also fall outside the requirements. The defendants' counsel seem to admit that the statute cannot be upheld if it prevents buyers and sellers from dealing in the oils just referred to in cases where the buyer is getting exactly what he wants and there is no deception. But the statute makes no such distinction and falls like the rain on the just and the unjust. We think it clear that it must be taken as it reads and when so taken will bar all oils which do not meet the standard of 323B or are not "equal to or better in quality" than it.

Whether or not the purpose was to prevent fraud, the means used do not seem to have been reasonably fitted for the purpose. Sections 1, 2, and 3 which were clearly justified in order to guard against deception might have been followed by a provision that the seller must put on every container a formula of the contents. But the following sections of the act are not reasonably calculated to prevent deception, but proscribe useful oils which have a wide market and satisfy the public. This is established, not only by the oral testimony, but is conceded by defendants under 10 and 11 of the stipulation.

The evidence establishes the following propositions:

(1) That a lubricating oil for automotive engines is not necessarily in and of itself good or bad, but that its serviceability depends very largely upon the mechanism into which it is to be introduced as well as the work to which the mechanism is subjected.

(2) That the serviceability of some oil with reference to any given mechanism will vary in accordance with the climatic and operative conditions, and that what would be a good lubricant for a given mechanism under a certain set of conditions would not be a good lubricant for the same mechanism under a different set of conditions.

(3) That requirements for class A in Technical Paper 323B as to "viscosity," "flash and fire points," and "color" have no necessary relation to the general utility of a lubricating oil, and that the legislative enactment against a lubricating oil not "equal to or better in quality" than the oil described in "Technical Paper 323B" conveys a vague menace that puts liberty and property to a hazard—unjustified by any reasonable conception of due process of law.

The statute not only has created a situation where useful oils are prima facie barred because they do not meet the requirements of class D in Technical Paper 323B and in some cases cannot fairly be regarded as oils of so high a quality as therein described, but also because any substitutes which are allowed are determined by an utterly vague test. Who can say what the words "equal to or better in quality" and "specifications" mean? It is as though the plaintiffs were required to abstain from improper conduct in their business, or not to charge excessive prices for their merchandise. The provision of the Food Control Act (41 Stat. 297), penalizing sales of necessaries at "unjust or unreasonable rates or charges," was held invalid because the standard of duty set up was so vague and indefinite as really to be no rule or standard at all. United States v. Cohen Grocery Co., 255 U. S. 109, 41 S. Ct. 298, 65 L. Ed. 516, 14 A. L. R. 1045; Small Co. v. American Sugar Refining Co., 267 U. S. 233, 45 S. Ct. 295, 69 L. Ed. 589.

In our opinion the standard allowing any substitute for oils not conforming to the specifications laid down in 323B is so vague as to be invalid. But aside from this, the only warrant for the suppression of a legitimate business in a useful commodity of commerce lies in the lawful exercise of the police power. It is shown by the record that the lubricating oils in question are useful and harmless substances, and so long as sales are made honestly there can be no reason to prevent purchasers from obtaining what they wish, even though the article may be cheaper or inferior to that specified in 323B. The case seems to fall directly within the rulings in Weaver v. Palmer Bros. Co., 270 U. S. 402, 46 S. Ct. 320, 70 L. Ed. 654; Jay Burns Baking Co. v. Bryan, 264 U. S. 504, 44 S. Ct. 412, 68 L. Ed. 813, 32 A. L. R. 661; Adams v. Tanner, 244 U. S. 590, 37 S. Ct. 662, 61 L. Ed. 1336, L. R. A. 1917F, 1163, Ann. Cas. 1917D, 973; Meyer v. Nebraska, 262 U. S. 390, 43 S. Ct. 625, 67 L. Ed. 1042, 29 A. L. R. 1446; Tyson & Brother v. Banton, 273 U. S.

418, 47 S. Ct. 426, 71 L. Ed. 718, 58 A. L. R. 1236.

Moreover, the statute in its practical operation would seem to constitute an unwarranted burden upon interstate commerce. The evidence shows that lubricating oils are not manufactured in Connecticut, but are shipped into Connecticut, and are sold there as the last incident in the conduct of an interstate business.

Section 4 of the act uses the words: "No person, firm or corporation shall * * * have in his possession for the purpose of sale. * * *" It seems clear in these circumstances that the act is a burden on interstate commerce. It prevents both possession and sale even in the original packages of oils refined in other states and shipped into Connecticut. The absence of an expressed intent to regulate interstate commerce cannot save the act where the natural and inevitable effect and operation of the statute is to regulate interstate commerce and to impose unreasonable burdens upon it. Standard Oil Co. v. Graves, 249 U. S. 389, 39 S. Ct. 320, 63 L. Ed. 662; Schollenberger v. Pennsylvania, 171 U. S. 1, 18 S. Ct. 757, 43 L. Ed. 49; Collins v. New Hampshire, 171 U. S. 30, 18 S. Ct. 768, 43 L. Ed. 60.

We are aware of the fact that it is contended that any oil which is not of an expensive and very high grade may be represented to be of that grade and may lead in some cases to deception. But legislation like the present, where there is no proof of deception, is, under the decisions of the Supreme Court, interfering too greatly with legitimate transactions to be justified by any possible or slight gain. The act seems so unreasonable and arbitrary in its provisions as not to meet the test of the decisions we have cited.

The petition for the interlocutory injunction would be granted, except for the fact that we have proceeded to final hearing. In view of the foregoing, a permanent injunction is granted for the relief demanded in the bill of complaint.

Settle decree on notice.