HILL PACKING COMPANY, Plaintiff, *v.* CITY OF NEW YORK et al., Defendants.

Supreme Court, Special Term, New York County, June 20, 1944.

*Chauncey E. Treadwell* and *Arnold J. Brock* for plaintiff.

*Ignatius M. Wilkinson, Corporation Counsel (Charles C. Weinstein, Richard L. Baltimore, Jr.;* and *James J. Hurley* of counsel), for defendants.

KOCH, J. This is a motion for a temporary injunction during the pendency of this action, enjoining and restraining defendants, and each of them, their agents, servants and employees, from taking any steps to enforce section 327 of the Sanitary Code of the City of New York, as amended in the month of August, 1942, as against the plaintiff, a dealer in horse meat, or the products of the plaintiff, both in transport from the place of business of the plaintiff to the State of New York, and to the city of New York, and the sale and disposition thereof within the State of New York and the city of New York, until the entry of final judgment, etc.

Section 327 of the Sanitary Code, as amended, reads as follows:

" § 327. *Slaughtering of horses and sale of horseflesh regulated.*

" 1. The business of slaughtering horses shall not be conducted in The City of New York. No horseflesh shall be brought into, transported or held, kept, or offered for sale in said city without a permit therefor issued by the Board of Health, or otherwise than in accordance with the terms of said permit and the regulations of said board. Such permits when issued shall specify ' For Animal Consumption ' or ' For Human Consumption '.

" 2. No carcass, or part of a carcass of a horse shall be brought into The City of New York, or held, kept, sold, offered for sale or given away in said city, until it shall have been inspected and passed as fit for human food by a duly authorized inspector of the United States Department of Agriculture, and shall have been marked, stamped or branded as having been so inspected and passed, or, in the case of parts of a carcass, unless such parts shall have been cut from a carcass or part of a carcass which had previously been inspected and passed and so marked, stamped or branded as hereinbefore provided.

" 3. Horseflesh shall not be used as an ingredient of or in the preparation of any mixed food intended for human consumption.

" 4. Horseflesh, whether alone or combined with other ingredients, intended for animal feed shall not be brought into The City of New York, transported, or held, kept, stored, or offered for sale or sold unless decharacterized by harmless coloring or otherwise in a manner and with materials satisfactory to the Department of Health. This provision, however, shall not apply to horseflesh sold and transported to the New York Zoological Society or the Park Department of The City of New York."

The plaintiff contends that the ordinance is void, both insofar as it attempts to regulate the sale of horseflesh for human consumption, and, also, as it attempts to regulate the sale for animal consumption, but seeks an injunction only as it affects the transportation and sale of horseflesh for animal consumption, inasmuch as the plaintiff has not in the past, nor is now, engaged in selling horseflesh for human consumption within the city of New York. The plaintiff contends that the ordinance is invalid because it places an undue burden on interstate commerce in connection with an article of commerce which the United States Government, through the Bureau of Animal Industry and the Department of Agriculture, has declared to be fit for human consumption; that it is invalid because it is discriminatory because of the provision in subdivision 4 of section 327 providing that the section shall not apply to horseflesh sold and transported to the New York Zoological Society or the Park Department of the City of New York; that the ordinance is invalid because of indefiniteness in that it provides that "horseflesh must be decharacterized by harmless coloring matter or otherwise in a manner and with materials satisfactory to the Department of Health"; that it is invalid because it is not in reality a licensing statute but is in effect a statute

prohibiting the sale of horse meat for human consumption, because on plaintiff's application for a license it was advised by the Board of Health that " it was decided that the department would not consider applications to sell horseflesh for human consumption "; that it is invalid because it bears no reasonable relation to health and is therefore not within the police power of the Board of Health of the City of New York.

The moving papers establish that the plaintiff has substantial property rights which are affected by the section, and is one of the largest companies engaged in the slaughtering, sale and distribution of horseflesh, both for human and animal consumption in the United States; that it sells its products throughout various States in the Union and in foreign countries. The plant of the plaintiff is located in Kansas and the horseflesh, to the amount of hundreds of thousands of pounds, is shipped to the city of New York after having been frozen at plaintiff's plant in Kansas, packed into cartons, remaining in its frozen state until it is distributed from the storage plant in the city of New York in the original package.

There are three types of this frozen horse meat: (1) chunks of meat; (2) ground meat; and (3) ground meat mixed with ground bone. As to types 1 and 2, the cartons bear the following legend: " U. S. Inspected and passed by Department of Agriculture Est. E-83 ".

The plaintiff contends, and it is not contradicted, that the effect of this legend is that the United States Department of Agriculture, Bureau of Animal Industry, has pronounced the horse meat fit for human consumption.

The ground horse meat which is mixed with bone (number 3 above referred to) does not bear the legend above set forth, but merely one which indicates that the article has been prepared in an establishment operating under Federal meat inspection.

The plaintiff argues that the indefiniteness of the section is indicated by the fact that various measures approved by the Board of Health for decharacterization of the horse meat were later rescinded and other methods substituted, and further that the regulations adopted by the Bureau of Animal Industry provide that no products shall contain any dye, preservative, or added chemical except as permitted by certain other sections of the regulations, and that all these sections provide that any added matter, even harmless coloring matter, must be with the approval of and in such manner as may be designated by the Bureau of Animal Industry. That, by virtue of the indefinite-

ness of the ordinance in respect to defining exactly what is meant by decharacterization, regulations of the Board might well require some form of decharacterization which might not be approved by the Bureau of Animal Industry, thereby rendering impossible the transportation of plaintiff's product in interstate commerce.

Plaintiff's moving papers contain affidavits and other matter indicating that horse meat is equal in nutritive value to beef and other meats used for human consumption, that it is used by a great many people, and that it has also been used very largely as a diet for dogs and other animals for many years. Plaintiff alleges that for the last seven years it has been distributing horse meat in the State of New York and that its business was steadily increasing, and that since the date of the enactment of the ordinance — section 327 — the business has decreased to approximately one half of its former volume.

The defendants point out that the plaintiff is not restricted in the sale of horseflesh to customers outside the city of New York provided shipments are made by common carrier; they are also not restricted to sales to United States Government agencies; they may sell horseflesh with bone as they did prior to the enactment of the new regulations, and they may also sell horseflesh decharacterized with any of the materials suggested by the Health Department, and argue that the rights of the plaintiff have not been invaded; that the section protects the health of the inhabitants of the city; that the City had the power to pass the legislation, and that under the police power the wisdom of its action cannot be questioned.

There is no doubt that the State has power to pass laws protecting the health of the public and that the State may delegate that power to municipalities, and, further, that the Sanitary Code is an exercise of the police power and has the force of law. (*Lieberman* v. *Van De Carr*, 199 U. S. 552; *People ex rel. Lodes* v. *Dept. of Health*, 189 N. Y. 187; *People* v. *French Bottling Works*, 259 N. Y. 4; *People* v. *Kehoe*, 246 N. Y. 592.) It is settled law that in the absence of illegality, arbitrariness or capriciousness, the provisions of the Sanitary Code should be sustained by the court, and there is a presumption of constitutionality which must be overcome by the plaintiff. (*Pacific States Co.* v. *White*, 296 U. S. 176; *Matter of Stubbe* v. *Adamson*, 220 N. Y. 459.) While, with certain exceptions, the City has no power to legislate with reference to a product sold in interstate commerce, it still has regulatory powers with relation to articles affecting the public health, and the police power

extends to imposing restrictions having reasonable relation to preserving the public health. The nature and extent of such restrictions are matters for legislative judgment and are within the power of the State unless palpably unreasonable and arbitrary.

The issues presented are substantial. Horseflesh is a food product and a lawful article of commerce. As such, any statute which attempted to exclude it from importation into a State from another State where it was either processed or grown, would be violative of the United States Constitution. (*Shollenberger* v. *Pennsylvania,* 171 U. S. 1.) While a State and, a fortiori, a self-governing municipality, has power to regulate the introduction of a food product, such regulation must be enacted for the purpose of insuring the purity of the article, to prevent fraud and deception, or to promote honesty and disclosure in relation to the production and selling of the article. (*Shollenberger* v. *Pennsylvania, supra; People* v. *Guiton,* 210 N. Y. 1.) The regulating statute, however, may not impose such conditions which if complied with will effectually amount to a prohibition. (*Collins* v. *New Hampshire,* 171 U. S. 30.) In determining whether a statute is prohibitory or not, the " direct and necessary result of a statute must be taken into consideration * * * even if that result is not in so many words either enacted or distinctly provided for. In whatever language a statute may be framed, its purpose must be determined by its natural and reasonable effect." (*Collins* v. *New Hampshire, supra,* pp. 33–34; *Henderson et al.* v. *Mayor of N. Y. et al.,* 92 U. S. 259; *Morgan* v. *Louisiana,* 118 U. S. 455.) Laws passed by States in the exercise of their police powers which are not in conflict with laws of Congress upon the same subject, are valid laws even though incidentally affecting interstate commerce. (*Silz* v. *Hesterberg,* 211 U. S. 31.) It follows, therefore, that plaintiff's products may not be excluded from the city of New York but that regulatory ordinances may be enacted concerning them provided their effect is not prohibitory. The regulations heretofore set forth affect a product which the United States Government, through its Bureau of Animal Industry, has designated as fit for human consumption. Section 327 does not seek to regulate the purity of the horseflesh imported for animal consumption and no dispute appears to exist as to the quality of the plaintiff's product. Neither does the section tend to prevent fraud and deception or to promote honesty and disclosure in relation to the plaintiff's product. The plaintiff's product is unquestionably horseflesh, looks like horseflesh in its

natural state and is properly marked as is required by the applicable Federal regulations. No attempt is made by the plaintiff to pass off its product as something that it is not. The mere fact that horseflesh in its natural state looks like beef is not sufficient reason to compel the plaintiff to " decharacterize " it by the use of a foreign substance such as fish oil, charcoal, dyes, or other methods that might be suggested by the defendants. (*Collins* v. *New Hampshire, supra.*) The applicable Federal regulations provide: " No meat product shall contain any substance which impairs its wholesomeness, nor contain, except as permitted by paragraphs 2, 3, and 8 of this section, any dye, preservative, or added chemical. * * * Only harmless coloring matter may be used and these only with the approval of and in such manner as may be designated by the department." (Regulation 18 Governing the Meat Inspection of the U. S. Dept of Agriculture, eff. Nov. 1, 1922, Bureau of Animal Industry Order No. 211, Rev., § 6, pars. 1, 3.) To require plaintiff to add a " decharacterizing " agent " satisfactory " to the City's Health Department, might well result in inability by the plaintiff to meet these provisions in the Federal regulations. The language of section 327 is indefinite as to the nature of " decharacterization " which might be required, and being of the nature of a penal statute, definiteness is required. (*People* v. *Briggs*, 193 N. Y. 457.) Section 327, therefore, would seem to be an improper interference with interstate commerce and violative of the plaintiff's constitutional rights. A purchaser of horseflesh, even for animal consumption, should not be forced to purchase a discolored or befouled meat unless a compelling reason exists therefor. It is well known that animals are governed by their sense of smell and might refuse to eat meat treated with codliver oil or other " decharacterizing " agents. Animal owners may justifiably object to the unpleasantness and inconvenience of the handling of " decharacterized " horseflesh. The addition of the foreign substance suggested for " decharacterization " might very well excite a prejudice and repugnance to the point of positive refusal to purchase. The decreased sales by the plaintiff of its horseflesh containing ground bone is evidence of this fact. Such a result would make the regulation prohibitory and thus an interference with interstate commerce. (*Collins* v. *New Hampshire, supra.*) The question is presented as to whether the enactment of section 327 was a proper exercise of the police power and as such sustainable even though it indirectly affects interstate commerce. From affidavits presented on this motion there appears to be little

doubt that the plaintiff's horseflesh has found its way into channels leading to human consumption. It must be recognized that there is general public antipathy to the use of horseflesh for human consumption. Whether or not this antipathy is justified, it is not unreasonable to assume that many persons would be disturbed, emotionally, perhaps physically, should they learn that they had partaken of horseflesh. To protect the consuming public from being defrauded is important and greatly to be desired. The fact that providing this protection is difficult or arduous does not justify the enacting of a law which is destructive of individual property rights. (*Good Humor Corp.* v. *City of New York*, 290 N. Y. 312.) The fact that wrongdoers might misuse or abuse a proper article of commerce is not sufficient reason to change its real character. If wrongdoing exists it should be attacked directly and the wrongdoers dealt with accordingly. The innocent, however, should not be made to suffer because of the possibility of wrongdoing. It would seem that section 327 has no reasonable relation to the purpose sought to be accomplished by its enactment and is, therefore, unjustified. (*Sligh* v. *Kirkwood*, 237 U. S. 53.)

Subdivision 4 of section 327 provides: " Horseflesh * * * shall not be brought into the City of New York, transported, or held * * * unless decharacterized by harmless coloring or otherwise in a manner and with materials satisfactory to the Department of Health." To comply with this part of the section the plaintiff would be compelled to perform acts without the city of New York before it could even " transport " its product through the city of New York. While the defendants assert they have not attempted strict enforcement of this provision, the law as enacted makes provision for such enforcement if the defendants so desire. The plaintiff may not be compelled to rely upon the beneficence or laxity of the defendants, but rather should be governed in the conduct of its business by provisions which are understandable and definite. Certainly the defendants have no power to compel an act outside of the city of New York which regulates plaintiff's conduct in conducting its business in interstate commerce. Regardless of the purpose of the defendants in enacting section 327, they have exceeded their authority in an illegal and arbitrary manner not justified by the police powers admittedly resident in them.

The remaining contentions of the plaintiff also have merit. Section 327 specifically provides (subd. 4) : " * * * This provision, however, shall not apply to horseflesh sold and transported to the New York Zoological Society or the Park Depart-

ment of the City of New York." This exemption is discriminatory in that it favors the New York Zoological Society, a private corporation, and the Park Department of the City of New York over the plaintiff or customers of the plaintiff. The argument urged on behalf of the defendants that horseflesh sold to an agency or department of government will not reach the hands of the consuming public, and therefore need not be decharacterized, is specious. If wrongdoing is to be guarded against, no person or group should be exempt from proper supervision.

The motion for a temporary injunction is therefore granted. Settle order.