**UNITED STATES v. DURST.**

No. 9784.

District Court, S. D. West Virginia.

March 28, 1945.

A. Garnett Thompson, Asst. U. S. Atty., of Charleston, W. Va., and Ben Ivan Melnicoff, of Washington, D. C., for plaintiff.

John J. D. Preston and Charles M. Love, Jr., both of Charleston, W. Va., for defendant.

MOORE, District Judge.

Thomas Durst is the defendant in a criminal information charging in seventeen counts numerous violations of War Food Distribution Order 75–1. He demurred to the information, setting forth a number of grounds of demurrer. The only grounds seriously argued are those which challenge the validity of the regulation on which the information is based because of indefiniteness, in that, as defendant alleges, it fails to provide a standard which is certain enough to be used in determining the question of guilt or innocence.

War Food Distribution Order 75–1 was issued by the War Food Administrator pursuant to the authority of the Act of Congress of June 28, 1940, § 2(a), as amended by § 301, of the Second War Powers Act of 1942, 56 Stat. 176, 50 U.S.C.A. Appendix, § 633, which authorizes the President of the United States to make allocations of materials and facilities needed for the national defense, whenever he is satisfied that the fulfillment of requirements for the defense of the United States may result in a shortage in the supply of any material or any facility for the national defense, or for private account, or for export. Section 1410.17(a) (12) and (13) define the terms "minimum sanitary facilities" and "adequate facilities" as applied to slaughterers of livestock in Class 2 as follows:

"(12) The term 'minimum sanitary facilities' means a structure that is reasonably fly and rodent proof with ample light and ventilation, which has concrete or comparably sanitary floors with adequate drainage system, is provided with clean water and which, together with all equipment, is in a clean and orderly condition. Such structure must be a reasonable distance from stables, barnyard, hog lot, refuse heap, privy, or other source of fly breeding or contamination."

"(13) The term 'adequate facilities' means:

"(i) Equipment in good order for the proper skinning and dressing of animals, and the rendering of fat or tallow; and

"(ii) Storage or other equipment for retaining or preserving edible or inedible by-products to insure against spoilage."

Paragraph (m) (2) of the same section reads as follows: "No class 2 slaughterer and no person who custom slaughters livestock, except in those cases where custom slaughtering is done on a farm for a farmer, shall slaughter livestock in the absence of minimum sanitary facilities and adequate facilities for the conservation and preservation of all edible and principal inedible by-products. Compliance with san-

itary requirements for State, county or city inspection may be considered as compliance with this requirement."

Defendant is a Class 2 slaughterer. The first fourteen counts of the information charge him with having slaughtered livestock in the absence of minimum sanitary facilities and adequate facilities for conservation, etc., as required by the foregoing regulation, in that the structure used as an abattoir, its equipment and immediate surroundings were filthy and unclean, were supplied with polluted and filthy water, were situated near a privy and hog lot, and other sources of fly breeding, that the structure and equipment were not fly and rodent proof, and were not in proper order for the skinning and dressing of animals, etc., and were not provided with storage and other equipment for preserving against spoilage. The fifteenth count is of the same nature, except that it is limited to the charge that defendant used polluted and filthy water. The sixteenth count is limited to the charge that the structure and equipment were filthy, unclean and disorderly; and the seventeenth count is limited to the charge that the structure was not provided with storage and other equipment for preserving against spoilage.

The requirements are: that the slaughterer must maintain a structure that is "reasonably fly and rodent proof" with "ample light and ventilation" with "adequate · drainage system" provided with "clean water" with structure and equipment "in a clean and orderly condition" and "a reasonable distance from stables, barnyard, hog lot, refuse heap, privy, or other source of fly breeding or contamination," that the equipment must be "in good order for the proper skinning and dressing of animals and the rendering of fat or tallow," and that storage or other equipment must be provided "for retaining or preserving edible or inedible by-products to insure against spoilage." If all these requirements, or any of them, are definite enough to fix a standard of guilt or innocence, the demurrer must be overruled; but if they are so indefinite as to leave the standard to be fixed according to the "variant views of the different courts and juries which may be called upon to enforce it," then the demurrer must be sustained.

By the Sixth Amendment to the Federal Constitution it is provided that "In all criminal prosecutions, the accused shall enjoy the right * * * to be informed of the nature and cause of the accusation."

Any statute or regulation purporting to define a crime, and fixing a penalty therefor, which fixes no definite standard by which guilt or innocence can be measured, is in conflict with the constitutional guarantee, and consequently inoperative and void. United States v. L. Cohen Grocery Co., 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516, 14 A.L.R. 1045. The uncertainty is usually brought about by the use of adjectives or adverbs which are relative in their meaning—that is, under some circumstances the words may have one meaning, but under different circumstances, another meaning. Thus, if slaughterers were required merely to abstain from improper conduct in their business, the invalidity of such a regulation would be clearly apparent. Atlantic Refining Co. v. Trumbull, D.C., 43 F.2d 154. What would be improper conduct would always be a question to be determined by each juror or court according to the opinion entertained by the individual, since no fixed standards of propriety are given.

Coming to the regulation in question here, the term "minimum sanitary facilities" standing alone and without definition would certainly not provide a sufficient standard of conduct. We are therefore called upon to examine the definition in Paragraph (12) of § 1410.17(a) to determine whether it supplies the requisite certainty.

I cannot accede to the argument made by the Government that because in some of the counts of the information complete absence of either sanitary or adequate facilities, minimum or otherwise, is charged, considerations of relativity do not enter in so far as these counts are concerned. The information can rise no higher than its source, and its source is the regulation contained in War Food Distribution Order 75–1.

One of the requirements is that the abattoir have concrete or comparably sanitary floors with adequate drainage system. There is no charge that the structure does not have concrete floors properly drained; therefore, this requirement need not be considered.

The phrase "reasonably fly and rodent proof," when subjected to examination, yields a degree of certainty little, if

any, greater than the term which it purports to define. It is not required that the structure be actually fly and rodent proof. Some degree of infestation is implicit in the definition. What would be reasonable or unreasonable is necessarily left for determination according to the fastidiousness or sense of cleanliness of the individual, whether juror or judge, who is to pass upon the question. This is not the fixed and immutable standard of guilt which is required of a criminal statute or regulation.

These considerations apply equally to the other phases of the definition given in Paragraph (12) except those with reference to clean water and clean structure and equipment, which will be later discussed. "Ample" light and ventilation is a relative term. One person might believe that a single window was sufficient for the purpose; another might think that half a dozen windows would not be enough; and both might be equally sincere in their belief. The requirement for an "adequate" drainage system is subject to the same infirmity; as is that requiring the structure to be a "reasonable" distance from stables, barnyard, hog lot, refuse heap, privy, or other source of fly breeding or contamination.

■ Among the requirements constituting minimum sanitary facilities is that the abattoir must be provided with clean water, and that it and its equipment must be "in a clean and orderly condition." There could hardly be a difference of opinion as to what clean water is. It is simply water that is not filthy or polluted. Likewise, clean equipment means equipment that is not dirty or filthy (though what is meant by "orderly" equipment would present a question of opinion and not of fact.) Count fifteen of the information charges the defendant with supplying filthy and polluted water for use in his abattoir and with failing to supply clean water. Count sixteen charges that the structure and equipment were filthy and unclean. These counts, in my opinion, are good. Though all the other applicable terms of the definition of "minimum sanitary facilities" are indefinite, these are definite and certain. They are separable from the others. In the absence of other requirements these would in themselves constitute minimum requirements.

■ Count seventeen would be good, but for the fact that it does not go far enough.

It charges that the defendant's structure (that is, his abattoir) was not provided with storage and other equipment for preserving his products against spoilage. The regulation does not require the storage facilities to be maintained in or at the structure. Therefore, failure to provide the structure with such storage equipment does not in itself, in my opinion, constitute a violation of the regulation. Such storage facilities may be provided elsewhere.

■ Charges in the various counts that the equipment was not in good order for the "proper" skinning and dressing of animals, etc., introduce, by use of the word "proper," the same element of relativity which makes other parts of the regulation too indefinite to establish a standard of conduct. What one might deem proper, another might have equally good reason to think improper.

With reference to the fourth, fifth, and sixth grounds of the demurrer, while these were not specifically argued in defendant's brief, in my opinion they are without merit. In the order given, these are: that the regulation was not intended to be enforced by criminal sanctions; that it is beyond the scope of the powers granted to the executive by the Second War Powers Act; and that, since compliance with state, county or city sanitary requirements is to be considered as sufficient compliance with the Federal regulation, the information must affirmatively allege defendant's failure in this respect.

■ The regulation, 1410.17(u), after specifying certain administrative remedies available to the Government, adds that "any person who wilfully violates any provision of this order is guilty of a crime and may be prosecuted under any and all applicable laws. Civil action may also be instituted to enforce any liability or duty created by, or to enjoin any violation of, any provision of this order." In view of this language, it seems clear that violation of any part of the regulation which prescribes or prohibits a definite course of conduct is punishable criminally.

■ The scope of the President's power, under the Second War Powers Act of 1942 to allocate commodities includes the prescribing of sanitary regulations which have for their purpose the conservation of such commodities, and therefore,

the regulation in question is not invalid as an excessive exercise of granted powers.

 Finally, the provision in the regulation that "compliance with sanitary requirements for State, county and city inspection may be considered as compliance with this requirement" may be used as a means of defense to the charge, but need not be negatived in the information.

Therefore, I am of opinion to sustain the demurrer to the information and all counts thereof, with the exception of counts fifteen and sixteen, and as to these two counts, the demurrer will be overruled.

An order may be entered to the above effect.