## STANDARD OIL COMPANY *v.* GRAVES, AND GRAVES AS COMMISSIONER OF AGRICULTURE OF THE STATE OF WASHINGTON.

### ERROR TO THE SUPREME COURT OF THE STATE OF WASHINGTON.

No. 177.  Argued January 23, 1919.—Decided April 14, 1919.

The construction of a state statute must be judged by its necessary effect; the name is not conclusive. P. 394.

A law of the State of Washington requires that products of petroleum, intended for use or consumption in the State, shall be inspected before being sold or offered for sale, and imposes fees for inspection by which in 10 years over $335,000 was collected, of which only about $80,000 was disbursed for expenses, leaving a revenue of over $255,000. *Held*, in respect of such products imported from another State for sale in Washington, that the charge is excessive and an unconstitutional burden on interstate commerce. *Id.*

94 Washington, 291, reversed.

THE case is stated in the opinion.

*Mr. Oscar Sutro,* with whom *Mr. E. S. Pillsbury, Mr. F. D. Madison, Mr. H. D. Pillsbury, Mr. Alfred*

*Sutro, Mr. R. A. Ballinger, Mr. Alfred Battle* and *Mr. Bruce C. Shorts* were on the brief, for plaintiff in error.

*Mr. L. L. Thompson,* Assistant Attorney General of the State of Washington, with whom *Mr. W. V. Tanner,* Attorney General of the State of Washington, and *Mr. Glenn J. Fairbrook,* Assistant Attorney General of the State of Washington, were on the brief, for defendant in error, discussed and relied upon the following: *Woodruff* v. *Parham,* 8 Wall. 123; *Hinson* v. *Lott,* 8 Wall. 148; *Brown* v. *Houston,* 114 U. S. 622; *Machine Co.* v. *Gage,* 100 U. S. 676; *Emert* v. *Missouri,* 156 U. S. 296; *Bacon* v. *Illinois,* 227 U. S. 504; *American Steel & Wire Co.* v. *Speed,* 192 U. S. 500.

The act does not prohibit the solicitation of interstate business, as in *Robbins* v. *Shelby County Taxing District,* 120 U. S. 489; or the introduction of goods into the State, as in *Leisy* v. *Hardin,* 135 U. S. 100, and *Schollenberger* v. *Pennsylvania,* 171 U. S. 1; nor does it impose a tax upon the goods before the transit is completed, as in *Foote & Co.* v. *Maryland,* 232 U. S. 494. It merely provides that all such products of petroleum, before being sold or offered for sale, shall, at some time and place, be inspected, just as did the statutes sustained in *General Oil Co.* v. *Crain,* 209 U. S. 211, and *Hinson* v. *Lott,* 8 Wall. 148. The question is really decided by this court in the *Crain Case, supra.* In *Foote & Co.* v. *Maryland, supra,* it is stated in the argument and assumed in the opinion that the inspection was made before the goods reached their destination, and therefore was an interference with articles in course of interstate transportation. This is apparent from the fact that the court nowhere mentions or refers to the *Crain Case,* which clearly holds that an ostensible inspection fee, which is in reality a revenue measure, does not interfere with interstate commerce if imposed upon an article after it has ceased to

move in such commerce and after it comes within the protection of the state laws. The *Foote Case,* without any discussion of the self-evident fact that the Maryland act did so operate, holds the inspection fee prescribed by that act to be void because it was in reality a revenue measure. If the distinction in the two acts which we have pointed out be adopted, they are in no way inconsistent. If it be rejected, the *Foote Case* must be taken as overruling the *Crain Case.* See *State* v. *Bartels Oil Co.,* 132 Minnesota, 138.

The first inquiry in determining whether there is an interference with interstate commerce is to ascertain whether the transit has ended. If it has, the goods cease to be in interstate commerce, and whether the particular tax be an inspection law, a general property tax, or an excise tax is immaterial to this court.

MR. JUSTICE DAY delivered the opinion of the court.

Plaintiff in error filed a complaint and an amended complaint in the Superior Court of Thurston County, Washington, to enjoin the collection of fees prescribed by the Oil Inspection Act of that State upon the ground that the statute was in contravention of the Constitution of the United States. The Superior Court held the law to be unconstitutional. Upon appeal the Supreme Court of Washington reversed the judgment. 94 Washington, 291.

The statute is the "State Oil Inspection Law" of the State of Washington. Its provisions are thus summarized in the opinion of the Supreme Court of the State: "The inspection law referred to in the complaint was first passed during the legislative session for the year 1905 (Laws 1905, p. 310). That act was amended in 1907, and will be found in chapter 192 of the Laws of 1907, p. 413 (Rem. Code, § 6051 *et seq.*). Section 3 (*Id.,* § 6052) of this act provides that all gasoline, benzine, distillate or

other volatile product of petroleum intended for use or consumption in this state for illuminating, manufacturing, domestic or power purposes, 'before being sold or offered for sale,' shall be inspected by the state oil inspector or his deputies. When the inspection is made, a certificate is to be issued, and the barrel or receptacle which contains the oil must be labeled or branded. Section 4 (*Id.*, § 6053) of the act contains a schedule of the fees which shall be paid for the inspection. Section 6 (*Id.*, § 6055) provides that if any person or persons, whether manufacturer, vender or dealer, or as agent or representative of any manufacturer, vender or dealer, 'shall sell or attempt to sell' to any person, firm, or corporation in this state, any illuminating oil, gasoline, benzine, distillate or any volatile product of petroleum, intended for use or consumption within this state, that has not been inspected and branded according to the provisions of the act, 'shall be guilty of a misdemeanor.' By the laws of 1913, chapter 60, p. 196 (Rem. Code, § 3000–1 *et seq.*), it was made the duty of the commissioner of agriculture to exercise all the powers and perform all the duties which, by the law of 1907, were vested in, and required to be performed by, the state oil inspector."

The case was heard upon demurrer to the amended complaint.

Among other things, the amended complaint set out: "Plaintiff is engaged in the State of California in the business of producing and buying crude petroleum oil, and of manufacturing and refining the same, and of shipping products of such manufacture, to-wit, illuminating oils, gasoline, distillate and other volatile products of petroleum. from its refineries in California into the State of Washington, where the same are sold by this plaintiff in large quantities for use and consumption in the State of Washington, for illuminating, manufacturing, domestic and power purposes. None of the products hereinabove

referred to are manufactured by plaintiff in the State of Washington, but all of said products are shipped into said State from the State of California.

"Plaintiff maintains in the State of Washington wharves and docks, tanks, warehouses, buildings, machinery, horses and wagons, and other equipment for receiving, shipping, handling, selling and otherwise distributing said products shipped as aforesaid from the State of California into the State of Washington."

The fees collected under the inspection acts are set out in the amended bill of complaint:

"The total receipts from the fees collected under said statute, chapter 192 of the laws of 1907, and chapter 161, laws of 1905, of the State of Washington, for the inspection therein provided for of said products mentioned in said laws intended for sale or consumption in this State, and the total disbursements in connection with the collection thereof, and in connection with the administration of said laws, and the net revenue from such receipts during the following years have respectively been the following:

| Date. | Receipts. | Disbursements. | Revenue. |
|---|---|---|---|
| June 30 to Dec. 31, 1905.... | $5,693.19 | $4,947.70 | $745.49 |
| Jan. 1 to Dec. 31, 1906...... | $9,539.86 | $6,610.80 | $2,929.06 |
| Jan. 1 to Dec. 31, 1907...... | $19,084.29 | $7,551.70 | $11,532.59 |
| Jan. 1 to Dec. 31, 1908...... | $23,493.93 | $8,684.87 | $14,809.06 |
| Jan. 1 to Dec. 31, 190 )...... | $24,799.67 | $8,802.90 | $15,996.77 |
| Jan. 1 to Dec. 31, 1910...... | $35,174.64 | $8,469.00 | $26,705.64 |
| Jan. 1 to Dec. 31, 1911..... | $38,344.42 | $8,762.85 | $29,581.57 |
| Jan. 1 to Dec. 31, 1912...... | $48,489.73 | $8,860.80 | $39,628.93 |
| Jan. 1 to Dec. 31, 1913...... | $51,816.91 | $8,859.00 | $42,957.91 |
| Jan. 1 to Dec. 31, 1914...... | $79,339.66 | $8,553.75 | $70,785.91 |
| | $335,776.30 | $80,103.37 | $255,672 93" |

It thus appears that the expense of administration of the statutes from 1905 to 1914 was $80,103.37. The total

receipts for the same time. $335,776.30, a difference of $255,672.93.

It is contended by the plaintiff in error that this inspection law violates the commerce clause, Art I, § 8, of the Constitution of the United States, in that it directly burdens such commerce by imposing inspection taxes far in excess of the cost of inspection. The Supreme Court of the State held that the tax was not upon property, but could be sustained as an excise or occupation tax upon the business of selling oil within the State. The reason given by the court for holding that the tax could not be upheld as a property tax rested upon provisions of the state constitution.

While this court follows the decisions of the highest court of a State, as to the meaning of statutes in cases of this character, the name given to the statute is not conclusive. It must be judged by its necessary effect, and if that is to violate the Constitution of the United States, the law must be declared void. *Minnesota* v. *Barber,* 136 U. S. 313, 319; *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292, 294, and cases cited.

That the State may pass proper inspection laws for oils brought into its borders in interstate commerce, there can be no question. But, taking the allegations of the complaint to be true, as we must for present purposes, the cost of the inspection was greatly less than the tax imposed. The general principle that a State may not impose burdens upon interstate commerce is so well settled, and has been so often declared in the opinions of this court, that a repetition of the reasons which have induced these decisions would be superfluous. In this case the amended complaint alleges that the oils were shipped into Washington from California. They are brought there for sale. This right of sale as to such importations is protected to the importer by the Federal Constitution, certainly while the same are in the original

receptacles or containers in which they are brought into the State. Under this law the oils cannot be lawfully sold at all until the importer has paid the inspection fees provided in the statute, after inspection. That inspection fees, so grossly in excess of the cost of inspection imposed upon articles brought into the State in interstate commerce are unconstitutional, was held in *Foote & Co.* v. *Maryland,* 232 U. S. 494. In that case the plaintiffs were engaged in the business of packing oysters in the City of Baltimore, and brought large quantities in from the State of Maryland and also from the waters of the States of Virginia and New Jersey. These oysters were inspected in Baltimore, where they were unloaded from vessels, by officials appointed under the provisions of the Maryland act which fixed an inspection fee of one cent per bushel to be paid one-half by the seller and one-half by the buyer. The case was brought to this court upon the ground that the inspection fee was excessive, and a burden upon interstate commerce, and levied an unlawful tax upon goods shipped into Maryland from other States. It was held that in view of the excessive nature of the inspection fees the requirement of the payment thereof necessarily imposed a burden upon interstate commerce in excess of the expenses of inspection, and that the act was, therefore, void. The subject was fully considered in an opinion by the late Mr. Justice Lamar, speaking for this court, and after recognizing the power of the State to impose reasonable inspection fees, and that such legislation will not be declared void unless the fees are obviously and largely beyond what is needed for the cost of inspection, he said: "If, therefore, it is shown, that the fees are disproportionate to the service rendered; or, that they include the cost of something beyond legitimate inspection to determine quality and condition, the tax must be declared void because such costs, by necessary operation, obstruct the freedom of commerce among

the States.  *McLean* v. *Denver & Rio Grande R. R. Co.*,
203 U. S. 38; *Brimmer* v. *Rebman*, 138 U. S. 78, 83;
*Postal Telegraph-Cable Co.* v. *Taylor*, 192 U. S. 64; *Patapsco Co.* v. *North Carolina*, 171 U. S. 345, 354; *Red 'C'
Oil Co.* v. *North Carolina*, 222 U. S. 380, 394; *Savage* v.
*Jones*, 225 U. S. 501." (P. 504.)  The principles stated in
*Foote & Co.* v. *Maryland* were recognized in *Pure Oil Co.*
v. *Minnesota*, decided by this court at this term, 248
U. S. 158.  The inspection fees there in question were
held not excessive, and we said (p. 162) "But if such inspection charge should be obviously and largely in excess
of the cost of inspection, the act will be declared void
because constituting, in its operation, an obstruction
to and burden upon that commerce among the States
the exclusive regulation of which is committed to Congress by the Constitution."

It is said that the *Foote Case* did not overrule the
previous case of *General Oil Co.* v. *Crain*, 209 U. S. 211,
and that the principles of that case should be controlling
here.  In the *Crain Case* this court sustained a tax upon
oil which had been removed from the tank cars in which
it was transported into Tennessee, and which, although
destined for points beyond Tennessee, was then in storage
in that State.  The distinction between that case and the
one now under consideration is obvious.  *Bacon* v. *Illinois*, 227 U. S. 504, is also relied upon.  In that case this
court sustained a property tax upon grain brought from
another State, but taken from the carrier and held by the
owner in Illinois with full power of disposition in that
State, and although intended to be ultimately forwarded
to a point beyond the State,—the property tax, after a
review of the previous decisions of this court, was sustained.

We reach the conclusion that the statute imposing
these excessive inspection fees, in the manner stated,
upon all sales of oils brought into the State in interstate

commerce necessarily imposes a direct burden upon such commerce, and is, therefore, violative of the commerce clause of the Federal Constitution. We may remark that the conclusion at which we have arrived has been reached by the supreme courts of North Dakota and Ohio. *Bartels Northern Oil Co.* v. *Jackman,* 29 N. Dak. 236; *Castle* v. *Mason,* 91 Ohio St. 296.

It follows that the judgment of the Supreme Court of Washington must be

*Reversed.*