**A. MAGNANO CO. v. DUNBAR, Atty. Gen. of Washington, et al.**

No. 458.

District Court, W. D. Washington, S. D.

Jan. 17, 1933.

McMicken, Ramsey, Rupp & Schweppe, of Seattle, Wash. (A. M. Davis, of New York City, and W. R. Brown, of Chicago, Ill., of counsel), for complainant.

John H. Dunbar, Atty. Gen., E. W. Anderson, Asst. Atty. Gen., John B. Fogarty, of Everett, Wash., and Philip D. Macbride, of Seattle, Wash., for defendants.

Before WILBUR, Circuit Judge, and CUSHMAN and NETERER, District Judges.

NETERER, District Judge (after stating the facts as above).

The state has full power to prescribe any system of taxation, judged in the light of its practical application to the affairs of men as usually conducted, not so arbitrary or extravagant as to constitute an abuse of power, which in the judgment of its legislators is necessary for its people. Southwestern Oil Co. v. Texas, 217 U. S. 114, 126, 30 S. Ct. 496, 54 L. Ed. 688; Mountain Timber Co. v. State of Washington, 243 U. S. 219, 237, 37 S. Ct. 260, 61 L. Ed. 685, Ann. Cas. 1917D, 642; North Laramie Land Co. v. Hoffman, 268 U. S. 276, 45 S. Ct. 491, 69 L. Ed. 953. And this court may not inquire into the motives of the Legislature in enacting the law. Hamilton v. Kentucky Distilleries Co., 251 U. S. 146, 161, 40 S. Ct. 106, 64 L. Ed. 194; Arizona v. California, 283 U. S. 423, 455, 51 S. Ct. 522, 75 L. Ed. 1154. The court must presume that the challenged act was enacted in good faith and be not by its necessary and natural operation destructive of rights secured by the Constitution. Minnesota v. Barber, 136 U. S. 313, 10 S. Ct. 862, 34 L. Ed. 455. And, considering such operation, the court is not limited to the mere phrase, but looks beyond the letter in such cases. Pleasant Tp. v. Ætna Life Ins. Co., 138 U. S. 67, 75, 11 S. Ct. 215, 34 L. Ed. 864; Lochner v. New York, 198 U. S. 45, 65, 25 S. Ct. 539, 49 L. Ed. 937, 3 Ann. Cas. 1133; Mountain Timber Co. v. Washington, supra.

The court may judicially notice facts and matters shown with facts established by

the evidence." Weaver v. Palmer Bros. Co., 270 U. S. 402, 410, 46 S. Ct. 320, 70 L. Ed. 654. See, also, Quong Wing v. Kirkendall, 223 U. S. 59, 64, 32 S. Ct. 192, 56 L. Ed. 350. Sale in interstate commerce is not forbidden by the act; nor is the introduction of oleomargarine, which is not affected, regulated, Schollenberger v. Pennsylvania, 171 U. S. 1, 19, 18 S. Ct. 757, 43 L. Ed. 49; nor is its practical effect prohibitory, Collins v. New Hampshire, 171 U. S. 30, 33, 18 S. Ct. 768, 43 L. Ed. 60. There is no tax on sale of oleomargarine. It may be introduced and sold in the state without tax by moving in interstate commerce from without the state direct to the consumer within the state. The tax is assessed on the dealer, the amount of tax being measured by the quantity sold, and is operative only when the interstate commerce relation to the oleomargarine is ended. To carry on trade within the state an excise tax is affixed, and this may be done, if not "so extravagant or arbitrary as to constitute an abuse of power." Mountain Timber Co. v. Washington, supra, 243 U. S. at page 237, 37 S. Ct. 260, 265, 61 L. Ed. 685, Ann. Cas. 1917D, 642.

The act in issue is unlike any of the numerous cases cited. It has relation to public revenue and local welfare rather than regulatory of local business, as in Real Silk Hosiery Mills v. Bellingham (D. C.) 1 F. (2d) 934; and as in Ex parte Bock (Cal. App.) 13 P. (2d) 836, not yet reported [in State reports]. Nor does a municipal ordinance bear the same status as to judicial review as a state statute. Roach v. Ephren, 82 Fla. 523, 90 So. 609; State v. Wilson, 101 Kan. 789, 168 P. 679, L. R. A. 1918B, 374. Nor does the act prohibit business under penalty, as Adams v. Tanner, 244 U. S. 590, 37 S. Ct. 662, 61 L. Ed. 1336, L. R. A. 1917F, 1163, Ann. Cas. 1917D, 973. See, also, Weaver v. Palmer Bros. Co., 270 U. S. 402, 410, 46 S. Ct. 320, 70 L. Ed. 654.

The instant issue must rest upon conditions of local welfare in the light of the reasonableness and with relation to the profits on oleomargarine and butter, public revenue, and the status of the parties, and the common good; and be predicated on a reasonable basis on the existing status in the disparity of production cost and reasonable profit and value of oleomargarine and butter, and the reasonable necessity of the tax in equality of right for the common good.

"The general legislative purpose is plain, and the intention to prohibit this particular business cannot properly be imputed from the amount of the tax payable by those embarked in it, even if we were at liberty on this record to go into that subject." Williams v. Fears, 179 U. S. 270, 21 S. Ct. 128, 130, 45 L. Ed. 186.

"But there is still another difficulty in the way of holding this tax invalid. Has this court, or any court, the right to say that a tax may not be levied because in the judgment of the court the amount is so large that it could not reasonably have been intended to produce revenue?" Sperry & Hutchinson Co. v. Blue, 202 F. 82, 88 (C. C. A.).

Chief Justice Marshall, in McCulloch v. Maryland, 17 U. S. (4 Wheat.) 316, 428, 4 L. Ed. 579: "The power of taxing the people and their property is essential to the very existence of government, and may be legitimately exercised on the objects to which it is applicable, to the utmost extent to which the government may chuse to carry it. The only security against the abuse of this power, is found in the structure of the government itself. In imposing a tax, the legislature acts upon its constituents. This is in general a sufficient security against erroneous and oppressive taxation. The people of a State, therefore, give to their government a right of taxing themselves and their property, and as the exigencies of government cannot be limited, they prescribe no limits to the exercise of this right, resting confidently on the interest of the legislator, and on the influence of the constituents over their representative, to guard them against its abuse."

And the same jurist in Providence Bank v. Billings, 29 U. S. (4 Pet.) 514, 563, 9 Curt. 171, 7 L. Ed. 939, referring to the taxing power, says: "It resides in government as a part of itself, and need not be reserved when property of any description, or the right to use it in any manner, is granted to individuals or corporate bodies. * * * This vital power may be abused; but * * * the interest, wisdom, and justice of the representative body, and its relations with its constituents, furnish the only security, where there is no express contract against unjust and excessive taxation; as well as against unwise legislation generally."

In Austin v. Boston, 74 U. S. (7 Wall.) 694, 699, 19 L. Ed. 224: "The right of taxation, where it exists, is necessarily unlimited in its nature. It carries with it inherently the power to embarrass and destroy."

In Spencer v. Merchant, 125 U. S. 345, 8 S. Ct. 921, 926, 31 L. Ed. 763: "The power to tax belongs exclusively to the legislative branch of the government. * * * The ju-

dicial department cannot prescribe to the legislative department limitations upon the exercise of its acknowledged powers. The power to tax may be exercised oppressively upon persons; but the responsibility of the legislature is not to the courts, but to the people, by whom its members are elected.'"

In McCray v. United States, 195 U. S. 27, 24 S. Ct. 769, 776, 49 L. Ed. 78, 1 Ann. Cas. 561, Chief Justice White said: "It is, however, argued, if a lawful power may be exerted for an unlawful purpose, and thus, by abusing the power, it may be made to accomplish a result not intended by the Constitution, all limitations of power must disappear, and the grave function lodged in the judiciary, to confine all the departments within the authority conferred by the Constitution, will be of no avail. This, when reduced to its last analysis, comes to this: that, because a particular department of the government may exert its lawful powers with the object or motive of reaching an end not justified, therefore it becomes the duty of the judiciary to restrain the exercise of a lawful power wherever it seems to the judicial mind that such lawful power has been abused. But this reduces itself to the contention that, under our constitutional system, the abuse by one department of the government of its lawful powers is to be corrected by the abuse of its powers by another department."

In Kehrer v. Stewart, 197 U. S. 60, 25 S. Ct. 403, 406, 49 L. Ed. 663, in discussing an occupation tax upon meat dealers, it is said: "What the necessity is for such tax, and upon what occupations it shall be imposed, as well as the amount of the imposition, are exclusively within the control of the state legislature. So long as there is no discrimination against citizens of other states, the amount and necessity of the tax are not open to criticism here."

And on a federal tobacco tax, in Patton v. Brady, Ex'x, 184 U. S. 608, 623, 22 S. Ct. 493, 498, 46 L. Ed. 713: "It is not the province of the judiciary to inquire whether the excise is reasonable in amount or in respect to the property to which it is applied. Those are matters in respect to which the legislative determination is final."

Mr. Justice Day, in Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 356, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, said: "It is urged that this power can be so exercised by Congress as to practically destroy the right of the states to create corporations, and for that reason it ought not to be sustained, and reference is made to the declaration of Chief Justice Marshall in McCulloch v. Maryland, that the power to tax involves the power to destroy. This argument has not been infrequently addressed to this court with respect to the exercise of the powers of Congress," and held a corporation tax not void as lacking due process under the Fifth Amendment.

In Alaska Fish Co. v. Smith, 255 U. S. 44, 41 S. Ct. 219, 220, 65 L. Ed. 489, in re excise tax of $2 a barrel or ton upon persons manufacturing fish oil, fertilizers, etc., the court said:

"The complainant alleges that the tax will prohibit and confiscate the plaintiff's business. * * * Even if the tax should destroy a business it would not be made invalid or require compensation upon that ground alone. Those who enter upon a business take that risk."

In The Child Labor Case, 259 U. S. 20, 42 S. Ct. 449, 450, 66 L. Ed. 817, 21 A. L. R. 1432, the court, among other things, said, as far as applicable here:

"If it were an excise on a commodity or other thing of value we might not be permitted under the previous decisions of this court to infer solely from its heavy burden that the act intends a prohibition instead of a tax. * * *

"And with the incidental motive of discouraging them by making their continuance onerous. They do not lose their character as taxes because of the incidental motive."

In Veazie Bank v. Fenno, 75 U. S. (8 Wall.) 533, 19 L. Ed. 482, the court said: "It will be observed that the sole objection to the tax there was its excessive character. Nothing else appeared on the face of the act," and held a 10 per cent. tax on currency constitutionally warranted. As in the instant case, the only matter urged is excessive tax. The tax operates with the same effect throughout the state, and is therefore uniform. Patton v. Brady, Ex'x, 184 U. S. 608, 628, 22 S. Ct. 493, 46 L. Ed. 713. The act being for revenue, the court cannot consider the reasonableness of the amount. Spencer v. Merchant, supra. The distinction between a regulatory tax and one solely for revenue is that the regulatory tax must bear a reasonable relation to cost of such regulation. Standard Oil Co. v. Graves, 249 U. S. 389, 39 S. Ct. 320, 63 L. Ed. 662; The Best Foods v. Welch (D. C.) 34 F.(2d) 682. The reasonableness of the revenue act is not open to judicial review unless the organic law is violated, but the reasonableness of a municipal ordinance, except where it conforms strictly to express

and specific legislative grant, is more amenable to judicial review and determination. Roach v. Ephren, 82 Fla. 523, 90 So. 609; State v. Wilson, 101 Kan. 789, 168 P. 679, L. R. A. 1918B, 374.

The court must presume that the legislators acted in the exercise of their official responsibility and by public authority within the limitations of the organic law. United States v. Castillero, 2 Black (67 U. S.) 1, 340, 17 L. Ed. 360. See, also, United States v. De la Mazo Arredondo, 31 U. S. (6 Pet.) 691, 728, 8 L. Ed. 547. And the court may not inquire into the legislative motive. United States v. Des Moines, etc., Co., 142 U. S. 510, 12 S. Ct. 308, 35 L. Ed. 1099; Arizona v. California, 283 U. S. 423, 51 S. Ct. 522, 75 L. Ed. 1154. And, in considering the unconstitutionality of the act, the court must recognize that the Constitution, the soul of the nation, is an organism of increasing growth and vitality expansive with the unfolding necessities of the people for the common good, and, as said by Chief Justice Marshall in McCulloch v. Maryland, 17 U. S. (4 Wheat.) 316, at page 415, 4 L. Ed. 579, "intended to endure for ages to come, and, consequently, to be adapted to the various crises of human affairs," and comprehended changed conditions arising, inspired by many generations having relation to new issues of adjustment, not present, perhaps, in the instant form in the minds of the Constitution makers, in the general unfolding of the problems of our civilization, but within expansive thought and spirit, contributing to a balance for the common good, and that the agriculture, of which dairying is a part, and the machine-synthetic-chemical or combination-of-natural products enterprise may be balanced in proper relation. "No nation can bear wealth that is not intelligent first." Beecher. And, while differentiation between the artificial and the natural, the man of annual net profit of more than $20,000 from sale of 5,000,000 pounds of oleomargarine, not while in interstate commerce, but after it became at rest in the state, and the man of production and sale of 33,000,000 pounds of butter, "Bowed by the weight of centuries he leans upon his cane and gazes on the ground; the emptiness of the ages in his face, and on his back the burden of the world * * *" (this overdraws the condition somewhat, but challenges the thought to the contrast), may not have been as vivid as when the state Legislature sought to, in some degree, balance the burden, and "give back the upward looking and the light" and inspire in the farmer courage and hope of at least partial relief. The thought, however,

"Wealth in gross is death, but life diffus'd;
As poison heals, in just proportion used;
In heaps, like ambergris, a stink it lies,
But well dispersed, in incense to the skies"
(Pope)

—may have been present.

The dealer, by the constitutional amendments, is not guaranteed an exorbitant profit, but is entitled to reasonable profit; he is not entitled to special privilege, but is entitled to equal right; is not entitled to tax exemption while the dairyman is taxed to support the government for his and the dealer's protection. Each must pay taxes in equal right for mutual benefit. May the court relieve the plethora of $20,000 annual profit of the dealer on the sale of Nucoa, one-fourth of which is from intrastate manufacture, from tax contribution, and burden the little or no profit of the farmer by exacting taxes, give to the dealer that hath large profit, and take from the farmer that hath little or no profit, even that which he seemeth to have; and do so without proof that the dealer's profit is a reasonable return on capital invested?

The tax, while evidently not imposed to prevent practical monopoly of business or as a regulatory measure, is a measure in aid of public revenue. The omission of the act, however, could obviously leave a status which could create such a monopoly as might compel the retirement of the cow from the competitive field and take from the state nearly $11,000,000 taxes annually; and from human life, dairy products, without which "the race cannot survive." Herbert Hoover, in "The Path of the Gopatis."

The dairyman pays annual taxes of $10,838,754, and produces 33,000,000 pounds of butter and some by-products. The dealer in oleomargarine sells in competition more than 5,000,000 pounds of oleomargarine, or practically one-sixth as much as the dairyman of butter, and enjoys the privilege of $20,000 net annual income without contributing to the maintenance of state and local government which gives it protection and whose benefits it enjoys.

There is no evidence that dealing in oleomargarine is plaintiff's exclusive business; the inference is that such dealing is a line among others in its general business.

In The Best Foods, Inc., v. Welch et al. (D. C.) 34 F.(2d) 682, 686, it was said:

"This court has no interest in the policy of the state revenue laws, so long as equal protection is not denied, and is reasonable and not purely arbitrary. Nor is the Fourteenth Amendment concerned with state legislation

where there is a real difference and it will not create an artificial equality. Quong Wing v. Kirkendall, 223 U. S. 59, 32 S. Ct. 192, 193, 56 L. Ed. 350. There is no equality between the cow on the farm and her natural product, 'butter,' and the manufacturing plant ᵒ ᵒ * and its artificial product, 'oleomargarine.' Each product has food value, but composed of different elements, and the difference determines between them as food, and is a just basis for classification. 'Any classification is permissible which has a reasonable relation to some permitted end of governmental action * * * if the classification is reasonably founded in "the purposes and policy of taxation." ' Heisler v. Thomas Colliery Co., 260 U. S. 245, 43 S. Ct. 83, 85, 67 L. Ed. 237; Watson v. State Comptroller, 254 U. S. 122, 41 S. Ct. 43, 65 L. Ed. 170. The state 'may impose different specific taxes upon different trades and professions. * * *' Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 232, 10 S. Ct. 533, 535, 33 L. Ed. 892.

"The act in issue exacts a definite license fee. It is significant that this money is placed in the general fund of the state and appears in the relation of a taxation measure, and as such may be sustained, and if for revenue the court cannot consider the reasonableness of the amount. Cooley on Taxation, vol. 1, § 29. The exercise of acknowledged power to tax may not be scrutinized by the court. The responsibility rests upon the Legislature, and if unreasonably exercised redress rests with the people."

The excise tax in the instant case bears the same relation as the license fee.

▮ The act in issue specifically excludes operation against the interstate commerce clause, and no tax is exacted until the article has become at rest and wholly within the jurisdiction of the state for the purposes of taxation, and the manufacture of 1,300,000 pounds of oleomargarine within the state per annum is not shown to be prohibitive with relation to reasonable profit on investment. The profit on sale intrastate is approximately one-fourth, or $5,000. The burden is upon the plaintiff to sustain the prohibitive character. The arbitrary wholesale price of the product on its importation into the state is no proof of cost of manufacture and reasonable profit of local product. The claim of the plaintiff that it has created an established trade within the state which produced a net profit of more than $20,000 annually derived from imported articles not affected by the act, and the local manufacture, and that the tax assessed is prohibitive and destroys the business, is not sustained by the proof. The plaintiff may, without tax, supply its customers by delivery direct from the plant to the consumer. Nor is the fact that it has ceased operation since the effective date of the act, and that no revenue has been derived by the state by reason of such act, persuasive upon this record. The manufacturer in the state and shipper into the state, and the distributor within the state, may not by their conduct arbitrarily control the legislative act of the sovereign state against the common good by fixing a price of intrastate manufactured articles, irrespective of the cost of production, and "strike" or quit trading as against legislation fixing a tax upon dealers of oleomargarine within the state in aid of public revenues.

▮ There is no proof that the oleomargarine cannot be manufactured at such price as would return to the plaintiff a reasonable profit upon its investment after the payment of the tax required by the state law. The arbitrarily fixed price which produced the $20,000 net annual income may not rebut the presumption in favor of the reasonableness of the act and against arbitrary conduct of the legislators. The court must presume that the legislators made due inquiry into the cost of production, the reasonable profit, and the common good, and, bearing in mind this presumption, the court is not required to overlook the offer of defendants to prove the manufacturing cost of oleomargarine to be 6 cents per pound, and, while the offer is not evidence, the unwillingness of plaintiff for the court to be advised does not take from the presumption, which must prevail.

That the oleomargarine is placed in a class by itself does not appear to be challenged.

The state excise tax does not burden plaintiff's business, if delivered from the plant direct to the consumer, thus only affecting interstate commerce incidentally and remotely, and is valid, where it is not clear that it is imposed for the covert and ulterior charged purpose. Hump Hairpin Co. v. Emmerson, 258 U. S. 290, 42 S. Ct. 305, 66 L. Ed. 622.

Placing in competition the farmers with 306,000 cows in the state, with a butter production of 33,000,000 pounds and some by-products, with the plaintiff engaged in selling in the state more than 5,000,000 pounds of oleomargarine per annum (aside from others so engaged), requiring the cow and the farm which supports her to contribute to the maintenance of state and local government

424

taxation, and affording protection to the dealer in the state of oleomargarine without contributing to the public tax for such support, challenges the state's power to keep alive. Taxation, under the general taxing power, rests wholly within the discretionary power of the state. State v. Nelson, 36 Idaho, 713, 213 P. 358; Standard Oil Co. v. Graves, 249 U. S. 389, 39 S. Ct. 320, 63 L. Ed. 662; Best Foods v. Welch (D. C.) 34 F.(2d) 682.

If the intelligent, patriotic duty of the state legislators, in equality of right and for the common good, deem it wise to more equally distribute the burdens of public revenue, and relieve the owners of the cows and dairy utilities of some of the $11,000,000 tax paid per annum, by requiring the dealers in oleomargarine to contribute to the expense of the government whose protection they receive and whose benefits they enjoy, by requiring payment of an excise tax on sales in the state by the dealer, the court should give critical consideration to incentive to industry within the state to the policy and purpose of taxation within constitutional limitations to the state's well being and for the common good. The equality clause is not affected where the requirements are impartially applied to all elements of a class, and similarly circumstanced persons. State v. Horn, 27 Idaho, 782, 152 P. 275. The state may tax property moved in interstate commerce after such property has become at rest therein and before sale. Woodruff v. Parham, 75 U. S. (8 Wall.) 123, 19 L. Ed. 382; Brown v. Houston, 114 U. S. 622, 5 S. Ct. 1091, 29 L. Ed. 257; Askren v. Continental Oil Co., 252 U. S. 444, 40 S. Ct. 355, 64 L. Ed. 654; The Best Foods v. Welch, supra.

The court may judicially notice the distressing condition of agriculture, present in the mind of the legislators, not only in this state, but throughout the nation, Atchison, etc., Ry. v. U. S., 284 U. S. 249, 254, 52 S. Ct. 146, 76 L. Ed. 273, and the unusual economic conditions at the time and since the effective date of the act, and that by reason of the excessive burdens there exists an unrest which may not be superficially passed, and, in view of the burden placed upon the complainant to establish unlawful the tax, we find ourselves unconvinced that the act complained of is so palpably unreasonable and arbitrary as to be forbidden; and, after fully and fairly considering the facts and stipulated evidence in this case, we are convinced that the act is constitutionally sound and the case should be dismissed.

And it is so ordered.

CUSHMAN, District Judge.

I concur in the conclusion reached in the foregoing opinion that the bill of complaint in this suit should be dismissed.

The act of the Legislature attacked became effective March 9, 1931. The bill of complaint herein was filed September 18, 1931. The stipulation of facts was filed September 13, 1932.

If it has been clearly shown that the law was passed in order to prohibit or prevent the sale of oleomargarine in the state of Washington, with no bona fide purpose on the part of the Legislature to raise revenue, it may be conceded that the law is invalid and complainant entitled to an injunction, providing it has been shown that it would suffer if the provisions of the act were enforced.

It has been contended upon the part of the complainant that such showing has been made; that such a purpose is to be inferred from the amount of the tax, 15 cents per pound, the prevailing prices of butter and Nucoa, a brand of oleomargarine dealt in by the complainant, at the time of the enactment and the fact that since the act became effective no sales of oleomargarine subject to the tax provided by the act have been made and no revenue received by the state of Washington under the act.

In view of the short time which has elapsed since the act became effective, coupled with the low range of prices in farm products which have prevailed during the period in question, an extraordinary condition of which the court will take notice (Atchison, Topeka & Santa Fé Railway Co. v. United States, 284 U. S. 248, 52 S. Ct. 146, 76 L. Ed. 273), and the effect of such low prices upon the advisability of attempting to market a butter substitute with a fixed tax upon it in a very considerable amount, an inference of such an intent on the part of the Legislature is unwarranted. The time which has elapsed does not constitute a test period of reasonable length under the conditions which have existed.

It is also to be noted that there has been nothing shown in this case as to the cost of the material used in making oleomargarine nor the cost of its manufacture or transportation, nor the cost of marketing it at wholesale or retail.

The stipulation of facts recites: "That complainant for many years immediately prior and up to the enactment of said chapter 23, Laws of 1931, was engaged in importing into the state of Washington from factories located in the state of California, and

thereafter selling to *bakeries, confectioners, grocers, institutions* and other persons in the state of Washington, an article of trade and commerce known as 'Nucoa'." (Italics mine.)

The act clearly shows that it was not intended to forbid interstate sales of oleomargarine. No showing has been made as to whether complainant's interstate sales have increased since the law became effective and to what extent. With the law taxing intrastate sales and leaving interstate sales untaxed, it is quite possible that the law has benefited rather than injured the complainant, in so far as its customers are of the description particularly pointed out above.