[No. 25732.   Department One.   December 12, 1935.]

GREAT NORTHERN RAILWAY COMPANY, *Respondent*, v.
THE STATE OF WASHINGTON, *Appellant*.[1]

[1]Reported in 52 P. (2d) 1274.

*The Attorney General* and *Geo. G. Hannan, Assistant,* for appellant.

*Thomas Balmer* and *E. C. Matthias,* for respondent.

STEINERT, J.—This is an action to recover an alleged excess of fees exacted by the state and paid under protest by the plaintiff to the department of public works. Upon a trial by the court, findings of fact and conclusions of law were made, based upon which the court entered judgment for plaintiff. The state has appealed.

At its 1929 session, the legislature enacted chapter 107, Laws of 1929, p. 209 (amending § 1 of chapter 113, Laws of 1921, p. 354, as amended by § 1, chapter 107, Laws of 1923, p. 290). The 1929 act, which is in question here, consists of one section and reads as follows:

"That hereafter every person, firm or corporation engaged in business as a public utility and subject to regulation as to rates and charges by the department of public works, except auto transportation companies and steamboat companies holding certificates under sections 10361-1 and 10361-2, shall, on or before

the first day of April of each year, file with the department of public works a statement on oath showing its gross operating revenue for the preceding calendar year or portion thereof and pay to the department of public works a fee of 1/10 of one per cent of such gross operating revenue: Provided, That the fee so paid shall in no case be less than ten dollars." Rem. Rev. Stat., § 10417 [P. C. § 5637-1].

Section 2 of chapter 113, Laws of 1921, p. 354, Rem. Rev. Stat., § 10418 [P. C. § 5637-2], which must be read in connection with the 1929 act, provides that such fees, when collected, shall be paid to the state treasurer and by him deposited in a fund known as the public service revolving fund.

Respondent paid the required fees annually as they became due, but under protest, claiming that the 1929 act, above set forth, was void. This action was begun in March, 1933, to recover the fees paid for the years 1929 to 1932, inclusive, less the amounts admittedly due for those years under other applicable statutes, namely, chapter 107, Laws of 1923, p. 290, Rem. 1927 Sup., § 10417, and chapter 227, Laws of 1929, p. 631, Rem. Rev. Stat., §§ 3836-1 to 3836-8 [P. C. §§ 4640-11 to 4640-18], inclusive. By stipulation of the parties made during the course of the trial, the complaint was amended to cover the alleged excess of the 1933 fee, which had also been paid under protest.

The court held the 1929 act to be unconstitutional on its face. For the purpose of the record, however, the court admitted evidence tending to show the operative effect of the act, and from such evidence found and concluded that the fees collected by the department were unreasonable and bore no just relation to the cost of regulation and inspection of railroads. Upon these two grounds, the court entered judgment for recovery of the excess amounts of the fees paid. Two questions are thus presented to us

for determination: (1) Whether the act is unconstitutional on its face, and (2) whether it is invalid because of its operative effect.

Respondent's main contention is that the act is void on its face, (1) because the fee, or tax, is not imposed for, nor limited by, the reasonable cost of supervising and regulating railroad companies, but is a flat fee imposed on railroad companies, and many unrelated utility companies as well, to pay the expenses of regulating them all, in the aggregate; and (2) because the fee, or tax, is imposed, both on railroad companies and on many unrelated utility companies, to pay not only the expenses incident to their supervision and regulation in general, but also the expenses of any and all duties and activities of the department, whether regulatory, administrative, police, or judicial. It is contended that, because of its unlimited scope, as thus challenged, the act contravenes the fourteenth amendment of the constitution of the United States and also the fourteenth amendment of the constitution of the state of Washington.

The act appears upon its face to be a regulatory one, and this court has recently declared it to be such. *Pacific Tel. & Tel. Co. v. Seattle,* 172 Wash. 649, 21 P. (2d) 721, affirmed in 291 U. S. 300, 54 S. Ct. 383, 78 L. Ed. 810. In that case, it was also held by this court that the fund created by chapter 113, Laws of 1921, p. 354, § 2, Rem. Rev. Stat., § 10418 [P. C. § 5637-2], *supra,* was solely for the purpose of defraying the expenses attendant upon the administration of the public service commission law. So we begin with the understanding that the act in question is intrinsically a regulatory one.

█ In considering the question of the constitutionality of a legislative act, two principles, well settled in this state, must be kept in mind. The first is this:

The courts will presume that an act regularly passed by the legislature is a valid law, and they will not declare it unconstitutional unless it is clearly shown to be so. *State v. Bowen & Co.*, 86 Wash. 23, 149 Pac. 330, Ann. Cas. 1917B, 625; *Litchman v. Shannon*, 90 Wash. 186, 155 Pac. 783; *State ex rel. State Reclamation Board v. Clausen*, 110 Wash. 525, 188 Pac. 538, 14 A. L. R. 1133; *State ex rel. Carroll v. Superior Court*, 113 Wash. 54, 193 Pac. 236.

The other principle is this: The courts will not take evidence as to the unconstitutionality of a legislative act, but will determine its constitutionality or unconstitutionality from matters that appear on the face of the act itself or from facts of which the courts may take judicial notice. *Barker v. State Fish Commission*, 88 Wash. 73, 152 Pac. 537, Ann. Cas. 1917D 810; *State ex rel. Govan v. Clausen*, 108 Wash. 133, 183 Pac. 115; *State ex rel. Trenholm v. Yelle*, 174 Wash. 547, 25 P. (2d) 569; *Ajax v. Gregory*, 177 Wash. 465, 32 P. (2d) 560.

Nothing appears on the face of the act under consideration to indicate, or even suggest, that it is unconstitutional, and there are no facts supplied by judicial notice to give it that effect. The act imposes upon all utilities subject to regulation, with two exceptions, a fee, or tax, of one-tenth of one per cent of their gross operating revenues, the fees to be paid into the public service revolving fund. The two classes of excepted utilities are dealt with in other statutes similar in nature. Auto transportation companies pay into the revolving fund a fee, or tax, of one per cent of their gross operating revenues. Rem. Rev. Stat., § 6395 [P. C. § 234-11]. Steamboat companies pay into the same fund a fee, or tax, of *not to exceed* one-fifth of one per cent of the amount of their gross operating revenues. Rem. Rev. Stat., § 10361-2 [P. C. § 5552-2].

The purpose of the present act being, in our opinion, apparent on its face as one of regulation, and having been so judicially declared, it must be presumed that the legislature was in possession of advisory facts on which it proceeded when passing the act. It must further be presumed that, from the information possessed by it, the legislature concluded that the amount of the fees, as determined by the prescribed rates of percentage, was reasonably necessary to meet the cost of supervising and regulating the respective utilities. We are convinced that the act cannot be declared to be unconstitutional on its face or from facts of which the court can take judicial notice.

■■ Respondent's second contention is that the invalidity of the act was established by the evidence produced upon the trial. Respondent's contention upon this phase of the case, as we understand it, is that evidence is admissible, not so much for the purpose of showing that an act is unconstitutional in its inception, or upon its face, but rather to show that the act has become invalid because of its intentional result or by its operative effect.

There is eminent authority supporting the principle upon which that contention is based. *Foote & Co. v. Stanley,* 232 U. S. 494, 34 S. Ct. 377, 58 L. Ed. 698; *Pure Oil Co. v. Minnesota,* 248 U. S. 158, 39 S. Ct. 35, 63 L. Ed. 180; *Standard Oil Co. v. Graves,* 249 U. S. 389, 39 S. Ct. 320, 63 L. Ed. 662; *Appalachian Coals, Inc. v. United States,* 288 U. S. 344, 378, 53 S. Ct. 471, 77 L. Ed. 825; *Wofford Oil Co. v. Smith,* 263 Fed. 396; *Cleveland Refining Co. v. Phipps,* 277 Fed. 463; *Lugo v. Suazo,* 59 F. (2d) 386; *State v. Bartles Oil Co.,* 132 Minn. 138, 155 N. W. 1035, L. R. A. 1916D 193; *State v. Standard Oil Co.,* 100 Neb. 826, 161 N. W. 537, L. R. A. 1917D 746; *Century Oil Co. v. Dept. of Agriculture,* 112 Neb. 73, 198 N. W. 569.

It will be found that most of these cases rest upon the commerce clauses of the United States constitution, Art. I, §§ 8, 10.

In the *Foote* case, *supra,* cited in many of the others, a clear and definite statement of the extent and effect of the principle is given, from which we excerpt a liberal quotation:

"Inspection necessarily involves expense and the power to fix the fee, to cover that expense, is left primarily to the legislature which must exercise discretion in determining the amount to be charged, since it is impossible to tell exactly how much will be realized under the future operations of any law. Besides, receipts and disbursements may so vary from time to time that the surplus of one year may be needed to supply the deficiency of another. If, therefore, the fees exceed cost by a sum not unreasonable, no question can arise as to the validity of the tax so far as the amount of the charge is concerned. And even if it appears that the sum collected is beyond what is needed for inspection expenses, the courts do not interfere, immediately on application, because of the presumption that the Legislature will reduce the fees to a proper sum. *Red 'C' Oil Co. v. North Carolina,* 222 U. S. 380, 393. But when the facts show that what was known to be an unnecessary amount has been levied, or that what has proved to be an unreasonable charge is continued, then, they are obliged to act in the light of those facts and to give effect to the provision of the Constitution prohibiting the collection by a State of more than is necessary for executing its inspection laws. In such inquiry they treat the fees fixed by the Legislature for inspection proper as *prima facie* reasonable and do not enter into any nice calculation as to the difference between cost and collection; nor will they declare the fees to be excessive unless it is made clearly to appear that they are obviously and largely beyond what is needed to pay for the inspection services rendered. Still, effect must be given to the provision of the Constitution, which, in unusual and emphatic terms, permits the State to collect only what is 'absolutely necessary.' If,

therefore, it is shown, that the fees are disproportionate to the service rendered; or, that they include the cost of something beyond legitimate inspection to determine quality and condition, the tax must be declared void because such costs, by necessary operation obstruct the freedom of commerce among the States. (Citing cases.)''

But assuming that the principle just adverted to has legal acceptance and that there are instances in which it may properly be applied, we apprehend that this case was not submitted to the court, nor decided by it, upon that theory; and if it was, then we are further convinced that the evidence neither compels nor warrants a finding of invalidity of the act because of the result intended by the legislature or because of the operative effect of the act.

The record reveals that the court, at the conclusion of the trial, was of the view that the question was entirely one of law, and that the evidence, as submitted, was immaterial and irrelevant. That was the position taken by appellant's counsel from the beginning, and respondent's counsel appear to have finally conceded the point. In the progress of the trial, however, the court admitted the evidence for the purpose of completing the record, so to speak, and to obviate the possible necessity of being required to take evidence later on because of an adverse decision, on appeal, on the question of law.

Although the court did make findings based on such evidence, from which certain conclusions were drawn, and upon which the judgment as entered was based, yet, as already stated, the court considered the question as essentially one of law and not one of fact, nor even as one of mixed law and fact. If we should likewise consider the matter as being solely one of law, then what we have already stated would necessarily dispose of this case, on the ground that the 1929 act

is not unconstitutional on its face, nor to be declared so from facts of which we may take judicial knowledge. However, since the record presents the case as one having a factual angle, we shall, for the purpose of the argument, consider that phase of it and express our view thereon.

This is a law action. The material allegations of the complaint were denied by the answer. The burden of proof, therefore, rested on the plaintiff, who is the respondent here. The evidence consisted entirely of documentary records and the testimony of one witness, the auditor of the department of public works. The documentary records consisted almost entirely of the annual reports of the department to the governor. Those reports gave a resume of the activities of the department and the expenses incident thereto. It is true that the reports did not show that the total amount of the expenses incurred was allocated to the respective classes of utilities in proportion to the cost of supervising and regulating each class; on the contrary, so far as is shown by the reports, all expenses of supervising and regulating the utilities, generally, were paid, as required, from the public service revolving fund, into which the fees collected from the several utilities had been deposited. But the reports did show that a vast amount of supervision and regulation was necessary and had been done with respect to railroads, as well as the other and unrelated utilities.

The real controversy on the question of fact in the case was whether one-tenth of one per cent of the gross revenues of the railroads, from intrastate commerce, was more than was reasonably necessary to cover the cost and expense of railroad supervision and regulation. From what appears in the reports it could not be said dogmatically that the rate of percentage prescribed by the act was unnecessarily excessive. In-

deed, it is contended by the respondent, and so found by the court, that, inasmuch as the department was not required by law to keep, and in fact did not keep, an account of the expense of regulating and supervising railroads, separate and apart from the expense of supervising and regulating other public utilities, it was practically impossible at the time of the trial to make any intelligible segregation. But the difficulty attendant upon meeting the burden of proof does not obviate the necessity of it. The burden rested upon and remained with the respondent and did not, because of its difficulty, shift to the appellant. Not having met the burden imposed upon it, the respondent did not make a case for relief.

But, going even beyond that, the auditor testified that for years he had kept an account which showed that the cost of supervising and regulating the railroads of the state far exceeded the amount of the fees imposed upon them by the act. While the account kept by the auditor was not official, in the sense that, of itself, it was admissible in evidence, yet what the auditor did in that respect qualified him to testify as to the ultimate fact. Without further detailing the evidence, we will say that, in our opinion, and in so far as there was any evidence on the subject, it preponderated against the findings made by the court as to the cost of supervising and regulating railroads.

The mainspring of respondent's contention upon the immediate point is that many of the activities of the department are not supervisory or regulatory in nature, but are administrative or judicial in character, and that the utilities cannot be required to pay fees which are used, in part, to carry on these latter functions. It may be admitted that, if taxes, or fees, should be levied to pay for services in no way connected with public utilities, and at the same time such utilities were

subjected to direct taxation upon their properties for such purposes equally with other corporations, while the other corporations were not required to pay the prescribed taxes, or fees, then there would be just ground for complaint of unlawful discrimination against such public utilities. But that is not the case here.

Respondent takes altogether too narrow a view of the scope and purview of a supervisory or regulatory act, such as the one in question. The purpose of the act is not limited to mere *inspection* of railroad property, but is a much broader and more comprehensive one. Though railroads are private corporations, their uses are public. They exist for the convenience of the people in various kinds of transportation. They are given certain special privileges to be exercised in the interest of the public, and, to guarantee their performance, the railroads, like other public utilities, are made subject to regulation. Such regulation extends not only to matters affecting safety in transportation of passengers and freight, but also to matters affecting adequacy of transportation and reasonableness of rates.

In the very nature and necessity of things, such regulation must have a broad field, the extent of which must be determined by legislative discretion. The power of regulation conferred upon the department of public works must be commensurate with the duties to be performed and the purposes to be lawfully effected. When the interests of the public and of individuals or corporations are blended in a service imposed by law, it is a matter of legislative discretion to determine who shall bear the cost and in what proportions.

In *Charlotte, C. & A. R. Co. v. Gibbes*, 142 U. S. 386, 12 S. Ct. 255, 35 L. Ed. 1051, the supreme court of the

United States, in speaking of a similar situation with reference to railroads, said:

"Being the recipients of special privileges from the State, to be exercised in the interest of the public, and assuming the obligations thus mentioned, their business is deemed affected with a public use, and to the extent of that use is subject to legislative regulation. *Georgia Railroad & Banking Co. v. Smith,* 128 U. S. 174, 179. That regulation may extend to all measures deemed essential not merely to secure the safety of passengers and freight, but to promote the convenience of the public in the transaction of business with them, and to prevent abuses by extortionate charges and unjust discrimination. It may embrace a general supervision of the operation of their roads, which may be exercised by direct legislation commanding or forbidding, under severe penalties, the doing or omission of particular acts, or it may be exercised through commissioners specially appointed for that purpose. The mode or manner of regulation is a matter of legislative discretion. When exercised through commissioners, their services are for the benefit of the railroad corporations as well as of the public. Both are served by the required supervision over the roads and means of transportation, and there would seem to be no sound reason why the compensation of the commissioners in such case should not be met by the corporations, the operation of whose roads and the exercise of whose franchises are supervised. In exacting this there is no encroachment upon the Fourteenth Amendment. Requiring that the burden of a service deemed essential to the public, in consequence of the existence of the corporations and the exercise of privileges obtained at their request, should be borne by the corporations in relation to whom the service is rendered, and to whom it is useful, is neither denying to the corporations the equal protection of the laws or making any unjust discrimination against them."

In the case now before us, the activities of the department with respect to railroads were, in our opinion,

clearly within the field of proper supervision and regulation.

The judgment is reversed, with direction to the trial court to dismiss the action.

GERAGHTY, TOLMAN, BLAKE, and MITCHELL, JJ., concur.